(989 P.2d 795)

No. 81,242

STATE OF KANSAS, *Appellee*, v. HAROLD EICHMAN, *Appellant*.

Opinion filed October 1, 1999.

*David O. Baumgartner,* of Baumgartner Law Office, of Phillipsburg, for appellant.

*Leonard J. Dix,* county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before ELLIOTT, P.J., LEWIS and MARQUARDT, JJ.

MARQUARDT, J.: Harold Eichman was charged with two counts of aggravated assault of a law enforcement officer. One incident involved the use of his truck and the other involved the use of a revolver. Eichman was tried by a jury and found not guilty of the charge involving the truck, but was convicted of aggravated assault of a law enforcement officer, committed with a revolver. Eichman appeals.

On August 30, 1996, Kim Eichman, Eichman's ex-wife, phoned the Rooks County Sheriff's Department for help. Deputies Ronald Turnbull and Yolanda Allen were dispatched to the scene. The deputies were in uniform and in a marked car.

Kim told Deputy Turnbull that she was afraid Eichman might harm her or their children. The deputies found Eichman sitting in his truck in front of Kim's residence. Deputy Turnbull told Eichman that Kim and the children did not want to see him. He told Eichman to leave or he would be arrested.

Deputy Turnbull said that Eichman used profanity, and the mirror on the driver's door bumped Deputy Turnbull's arm as Eichman sped away. Both deputies thought Eichman was going to run over Deputy Turnbull. Eichman testified that as he reached for his keys, Deputy Turnbull jumped backwards and bumped his elbow on the truck mirror.

The deputies located Eichman in his truck parked in the driveway of his father's residence. Deputy Turnbull was directly behind Eichman when he saw Eichman's right hand come up holding a revolver. Deputy Turnbull felt threatened and yelled at Eichman to put the gun down. Both deputies believed Eichman was going to shoot at Deputy Turnbull. At about the same time, Deputy Allen Rogers arrived. Deputy Rogers saw Eichman holding the revolver and believed there was going to be a "gun fight."

After several requests, Eichman put the revolver down. The weapon was fully loaded. Eichman did not point the revolver at a deputy. When Eichman refused to get out of the truck, Deputies Turnbull and Rogers pulled him out, cuffed him, and arrested him.

Eichman testified that the revolver was on the console next to him and when he accelerated, the revolver fell backwards onto the floorboard. After arriving at his father's house, Eichman reached behind the seat and picked up the revolver. Eichman first realized that deputies were present when he heard Deputy Turnbull say, "'Put the gun down or I'm going to blow your fucking head off.'" Eichman claimed that he laid the gun down on his lap, put his hands up, unlocked the door, and exited the truck without assistance.

### Instruction

Eichman argues that an instruction on intent was required because general criminal intent is an element of aggravated assault, and intent was a fundamental issue in the case. Eichman did not

request this instruction or object to the trial court's failure to give it.

"[N]o party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of his or her objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 22-3414. Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997).

Aggravated assault of a law enforcement officer is intentionally placing a uniformed or properly identified law enforcement officer who is engaged in the performance of his or her duty in reasonable apprehension of immediate bodily harm, committed with a deadly weapon. K.S.A. 21-3411; K.S.A. 21-3410(a); K.S.A. 21-3408.

Criminal intent is an essential element of every crime unless specifically excluded by statute. K.S.A. 21-3201(a). Intentional conduct is purposeful and willful, not accidental. K.S.A. 21-3201(b). PIK Crim. 3d 54.01-A adopts this definition, but the Notes on Use state that the instruction "is not recommended for general use." Rather, the PIK instruction which defines the crime should cover the applicable intent, specific or general. The PIK Crim. 3d 54.01-A instruction is given only if two criteria are met: (1) the crime requires a general criminal intent, and (2) the state of mind of the defendant is a substantial issue. PIK Crim. 3d 54.01-A, Notes on Use.

The Kansas Supreme Court has held that aggravated assault with a deadly weapon of a law enforcement officer does not require any particular intent or other state of mind. See *State v. Farris*, 218 Kan. 136, 141, 542 P.2d 725 (1975). *Farris*, however, was decided prior to 1993. Effective July 1, 1993, the definitions of assault and aggravated assault were changed. See L. 1992, ch. 298, § 9 and § 10. Whether the current statute requires proof of specific or general intent has not been decided by our appellate courts.

"Aggravated assault on a law enforcement officer" was defined as "[u]nlawfully assaulting or striking at another with a deadly weapon," when "committed against a uniformed or properly iden-

tified . . . law enforcement officer," before the statute was amended in 1993. K.S.A. 21-3411 (Ensley 1988); K.S.A. 21-3410(a) (Ensley 1988). Further, assault was defined as an "intentional threat or attempt to do bodily harm to another coupled with apparent ability and resulting in immediate apprehension of bodily harm." K.S.A. 21-3408 (Ensley 1988).

· Specific intent is distinguished from general intent where, in addition to the intent required by K.S.A. 21-3201, the statute defining the crime in question identifies or requires a further particular intent which must accompany the prohibited acts. *State v. Esher*, 22 Kan. App. 2d 779, 782, 922 P.2d 1123, *rev. denied* 260 Kan. 997 (1996); see *State v. Bruce*, 255 Kan. 388, 394, 874 P.2d 1165 (1994). The Court of Appeals in *Esher*, 22 Kan. App. 2d at 783-84, defined aggravated assault with a deadly weapon as a general intent crime and cited *State v. Cunningham*, 222 Kan. 704, 707-08, 567 P.2d 879 (1977). However, *Cunningham* was decided prior to 1993.

Effective July 1, 1993, K.S.A. 21-3408 simply requires proof that the defendant *intentionally* placed another person in reasonable apprehension of immediate bodily harm. The statute does not identify or require a specific intent which must accompany the prohibited act. Thus, it still incorporates the general intent required by K.S.A. 21-3201, not a specific intent. See *Esher*, 22 Kan. App. 2d at 784 ("intentionally caused physical contact" language in aggravated battery statute makes the crime a general intent crime).

The second prong for giving the general criminal intent instruction was met because Eichman's intent was the only real disputed issue. He presented two reasons negating intent: (1) He was only retrieving the revolver from the back of truck when he lifted it up, and (2) he did not know any officers were present when he did so. Thus, the court erred because it did not give a general criminal intent instruction separately, or include it in the instruction defining aggravated assault of a law enforcement officer by use of a revolver.

The instructions are clearly erroneous only if this court is firmly convinced that there is a real possibility the jury would have rendered a different verdict had it been instructed on general criminal

intent. See *Henry*, 263 Kan. at 131. Eichman does not show how a layperson's understanding of intent is different from the definition of intent described in K.S.A. 21-3201 or PIK Crim. 3d 54.01-A, or how an instruction on general criminal intent would cause a different jury verdict.

This case did not involve a complicated factual or legal issue. The jury had to decide if Eichman had the requisite intent towards Deputy Turnbull when he retrieved the revolver from the back of his truck, or if Eichman was holding the revolver up above the back seat so that Deputy Turnbull would see it and become fearful or intimidated. The jury's decision depended upon its determination of the credibility of the witnesses. The jury believed Deputy Turnbull. Adding an instruction for general criminal intent would not have assisted the jury in deciding which witness was credible. The failure to give the general intent instruction was not reversible error.

### Sufficiency of Evidence

When sufficiency of the evidence is challenged, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Claiborne*, 262 Kan. 416, 425, 940 P.2d 27 (1997).

Eichman argues a conviction for aggravated assault requires an overt act directed towards the victim to show intent. He cites several cases to support his theory; however, all of the cases were decided prior to 1993.

The definition of aggravated assault, prior to its amendment in 1993, required a threat or an overt act coupled with the deadly weapon. The current definition does not require an overt act. Rather, any conduct which intentionally places another person in reasonable apprehension of immediate bodily harm is sufficient. When Eichman left Kim's residence, he challenged Deputy Turnbull's authority by recklessly speeding away and shouting profanity at Deputy Turnbull. It is conceivable Eichman wanted to continue this challenge at his father's house. The jury could have inferred

that Eichman held the revolver up high enough and long enough for Deputy Turnbull to see it through the rear window and that Eichman's intent for doing so was to make Deputy Turnbull fear immediate bodily harm.

The evidence was sufficient for Eichman's conviction of aggravated assault of a law enforcement officer, committed with a deadly weapon.

### Motions for Judgment of Acquittal

Eichman filed two motions for acquittal, one at the close of the State's evidence and the other after his conviction. His basis for both motions was the same; he argued that an overt act was required to prove intent for a conviction of aggravated assault with a revolver. The trial court believed the issues were whether Eichman's conduct was intentional and whether Deputy Turnbull's apprehension of fear of bodily harm was reasonable. Both issues were factual issues for the jury. Both motions were denied.

" 'A trial judge, in passing on a motion for judgment of acquittal, must determine whether upon the evidence—giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact therefrom—a reasonable mind or a rational trier of facts might fairly conclude guilt beyond a reasonable doubt.' " *State v. William*, 248 Kan. 389, 400, 807 P.2d 1292 (1991), *cert. denied* 502 U.S. 837 (1997).

The issues raised in the motions for acquittal were ones of fact and will not be reweighed by this court.

Affirmed.