No. 83,084

STATE OF KANSAS, *Appellee*, v. MARLON JACKSON, *Appellant*.

(19 P.3d 121)

Opinion filed March 9, 2001.

*Rick Kittel*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, C.J.: Marlon D. Jackson appeals his jury trial conviction of felony murder (K.S.A. 21-3401[b]).

### FACTS

The following summary of the facts of the crime is sufficient for the issues raised herein. In the early morning hours of July 25, 1998, defendant and Donnell Harrell (also known as "Big Mike") drove to the house of Brian Tisdale on North Hydraulic in Wichita.

Tisdale was a reputed drug dealer and known to defendant. The purpose of the trip was to rob Tisdale, who was believed to be in possession of a substantial amount of cocaine. A fire fight broke out in the front yard of the house. Harrell was shot and killed by Tisdale, but not before Harrell had shot Tisdale. Each was shot multiple times. Defendant, the only participant still ambulatory, fled the scene. There was no evidence defendant had been armed. Tisdale survived his injuries, but refused to testify at trial. Substantial quantities of cash and illicit drugs were recovered from the crime scene, the same having been under the apparent control of Tisdale.

## SUPPRESSION OF INTERVIEW

For his first issue, defendant contends the district court erred in overruling his motion to suppress the interview he gave to two Wichita detectives.

Defendant was arrested on warrants unrelated to the case herein and taken to police headquarters. He was interviewed relative to the shooting of Harrell and Tisdale. At first defendant denied any involvement in or knowledge of the incident but ultimately made admissions upon which guilt as an aider and abettor of the underlying felony of aggravated robbery or attempted aggravated robbery could be predicated.

Defendant filed a motion to suppress the videotaped interview on the basis that on two occasions he made statements to the detectives that required immediate termination of the questioning.

We discussed the standards of review in *State v. Brown*, 258 Kan. 374, 393-94, 904 P.2d 985 (1995), generally applicable to issues of admissibility of custodial statements as follows:

"In *State v. Morris*, 255 Kan. 964, 971, 880 P.2d 1244 (1994), this court reiterated our standard of review concerning admission of custodial statements:

" 'The first question for this court to determine is whether there is substantial competent evidence to support the district judge's finding that the confession was voluntary. In determining whether a confession is voluntary, a court is to look at the totality of the circumstances. The burden of proving that a confession or admission is admissible is on the prosecution, and the required proof is by a preponderance of the evidence. Factors bearing on the voluntariness of a statement by an accused include the duration and manner of the interrogation; the

ability of the accused on request to communicate with the outside world; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused. *State v. Price*, 247 Kan. 100, Syl. ¶ 1, 795 P.2d 57 (1990). When a trial court conducts a full hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely and voluntarily given, and admits the statement into evidence at trial, an appellate court accepts that determination if it is supported by substantial competent evidence. See *State v. Johnson*, 253 Kan. 75, 83-84, 853 P.2d 34 (1993).'

See also *State v. Garcia*, 250 Kan. 310, Syl. ¶ 2, 827 P.2d 727 (1992). ('If the findings of the trial court on a motion to suppress evidence are based upon substantial evidence this court on review will not substitute its view of the evidence for that of the trial court.')."

" 'Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' " *State v. Wonders*, 263 Kan. 582, 589, 952 P.2d 1351 (1998) (quoting *State v. Haskins*, 262 Kan. 728, Syl. ¶ 1, 942 P.2d 16 [1997]).

The issue before us is considerably narrower than is usually asserted in this area. There is no claim that defendant was incapacitated in any way due to age, education, intoxication, illness, fatigue, language problems, etc. Rather the issue is focused on two very specific claims.

First, defendant contends that when his *Miranda* rights were being read to him, he stated he wanted an attorney and that he was misled into believing he had to talk to the detectives without an attorney. Secondly, he contends when he advised the officers he wanted to go to his cell, the interview should have stopped. The district court held a hearing on the motion, viewed the videotape, examined defendant's signed rights form, and heard the testimony of one of the interviewing officers. The district court concluded defendant had been fully and properly advised of his *Miranda* rights and had freely and voluntarily talked to the officers.

Preliminarily, it should be stated that our analysis is handicapped by the state of the record before us. The *Miranda* rights form filled out by defendant in the videotape is not before us. The detective's testimony at the suppression hearing is based on his recollection and, at times, is keyed to a transcript of the interview which was not in the record and is not before us. We have the videotape, but defendant's comments are often difficult to understand.

The first claim in this issue comes up early in the interview. The scenario was as follows:

Preliminarily, Detective Moore asked defendant if he could read, and defendant replied affirmatively. Defendant then said, "I'm still going to go to jail, right?" Moore replied, "Well you have some warrants out for your arrest, okay?" Defendant again said, "I'm still going to go to jail right?" Moore replied, "Yes, I think they are like traffic warrants or something like that." Then, each *Miranda* right was read aloud. Moore asked defendant after each individual item was read aloud if he understood that right. Defendant said yes and was asked to initial the form indicating he understood. As best as can be determined, at the end of the list of rights, the following colloquy took place between Moore and defendant:

Moore: "Having these rights in mind, do you wish to talk to us?"
Defendant: "Can I put no 'til I get my lawyer?"
Moore: "Well, that's your decision to make."
Defendant: "But, I'm still going to have to talk to you all anyway, right?"
Moore: "I'm sorry?"
Defendant: "I'm still going to have to talk to you all about whatever?"
Moore: "Well, you know, if you want to get a lawyer that's fine, I don't have a problem with that."
Defendant: "I have a lawyer already—"
Moore: "Okay, and—"
Defendant: "—but I have to get him before I can talk or—"
Moore: "You don't have to do that, that's just—"
Defendant: "—I don't have time for this shit."
Moore: "Okay, go ahead and sign your name."

The defendant initialed the waiver statement on the form while making his "I don't have time for this shit" statement and then

apparently signed his name on the form in response to the detective's final statement.

Defendant contends that when the detective stated, "I'm sorry," he was advising defendant that he had to talk to the officers. The officer testified he merely meant he did not understand the question defendant had just asked. The detective's interpretation is wholly consistent with the detective's words, tone, and body language, as shown on the videotape. The record before us clearly supports the district court's determination that defendant voluntarily waived his *Miranda* rights.

In *State v. Morris*, 255 Kan. 964, 880 P.2d 1244 (1994), we applied *Davis v. United States*, 512 U.S. 452, 129 L. Ed. 2d 362, 114 S. Ct. 2350 (1994), and *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981), and held:

"The test to determine if a suspect is asserting *Miranda* rights under *Edwards* is an objective inquiry, requiring some statement that can reasonably be construed to be an expression of a desire for an attorney's assistance. However, if a reference is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking his right to counsel, *Edwards* does not require that officers stop questioning the suspect. The United States Supreme Court determined that extending *Edwards* to create such a requirement would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate investigative activity by needlessly preventing the police from questioning a suspect in the absence of an attorney, even if the suspect does not wish to have one present. The *Edwards* rule was formulated to provide a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information. The clarity and ease of application of *Edwards* would be lost if officers were required to cease questioning based on an ambiguous or equivocal reference to an attorney, since they would be forced to make difficult judgment calls about what the suspect wants, with the threat of suppression if they guessed wrong. The Court found that while it will often be good police practice for officers to clarify whether a suspect making an ambiguous statement really wants an attorney, they are not required to ask clarifying questions. *Davis*, 129 L. Ed. 2d at 373. It concluded that after a knowing and voluntary waiver of rights under *Miranda* law enforcement officers may continue questioning until and unless a suspect clearly requests an attorney." 255 Kan. at 975.

Defendant's second point is a claim that the district court erred in finding that defendant's statement (2½ hours into the interview and immediately after a 15-minute break), "I just want to go to my

cell and do my time," was not an unequivocal request to end the interview. Defendant cites no authority that this statement mandated an immediate cessation of the interview. We find this claim to be without merit.

In summary, the district court's determination that the defendant's statements were freely and voluntarily made after having been fully and properly advised of his *Miranda* rights is supported by substantial competent evidence. We find no error in this issue.

## JURY INSTRUCTION

For his second issue, defendant contends the district court erred in refusing to give his requested instruction on aiding and abetting.

The court gave the following instruction:

"The following instruction pertains to the underlying felony of aggravated robbery or attempted aggravated robbery.

"A person who, either before or during its commission, intentionally aids, abets, or procures another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime."

This was taken directly from PIK Crim. 3d 54.05 (1998 Supp.), with prefatory language limiting it to the underlying felonies.

Defendant, based upon *State v. Schriner*, 215 Kan. 86, 523 P.2d 703 (1974), sought to have the following language added to the instruction:

"To be guilty of aiding and abetting in the commission of a crime the defendant must wilfully and knowingly associate himself with the unlawful venture and wilfully participate in it as he would in something he wishes to bring about or to make succeed."

When reviewing challenges to jury instructions, we are required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. *State v. Mims*, 264 Kan. 506, 514, 956 P.2d 1337 (1998).

In a criminal action, a trial court must instruct the jury on the law applicable to the defendant's theories for which there is supporting evidence. When considering the refusal of a trial court to give a specific instruction, the evidence must be viewed by the appellate court in the light most favorable to the party requesting the instruction. *State v. Sims*, 265 Kan. 166, 168, 960 P.2d 1271 (1998).

Defendant correctly states *Schriner* is noted in the comment following PIK Crim. 3d 54.05. However, the following also appears in the comment:

"Mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime is insufficient to establish guilt as an aider and abettor. *State v. Green*, 237 Kan. 146, 697 P.2d 1305 (1985). This language from *Green*, however, may properly be refused as an additional instruction by the trial judge since PIK 3d 54.05 clearly informs the jury that intentional acts by a defendant are necessary to sustain a conviction for aiding and abetting. *State v. Hunter*, 241 Kan. 629, 639, 740 P.2d 559 (1987); *State v. Scott*, 250 Kan. 350, 361, 827 P.2d 733 (1992); *State v. Ninci*, 262 Kan. 21, 46, 936 P.2d 1364 (1997)."

PIK Crim. 3d 54.05 (1998 Supp.) clearly informs the jury that intentional acts by the defendant are necessary to sustain a conviction for aiding and abetting.

There is no claim that the instruction as given did not accurately and fairly state the applicable law. We find no merit in this claim of error.

## OPENING STATEMENT

Defendant contends the district court abused its discretion in overruling two of defendant's objections to the prosecutor's opening statement.

First, the applicable standard of review needs to be stated.

The district court has broad discretion in controlling the opening statement and reviewing courts will not interfere unless discretion has been abused. *State v. McCorkendale*, 267 Kan. 263, 277, 979 P.2d 1239 (1999). See *State v. Duncan*, 25 Kan. App. 2d 41, 42, 956 P.2d 737, *rev. denied* 265 Kan. 887 (1998), and cases cited therein. Judicial discretion is abused only when no reasonable per-

son would take the view adopted by the trial court. *State v. Williams*, 268 Kan. 1, 8, 988 P.2d 722 (1999).

In his opening statement the prosecutor went into considerable detail as to defendant's interview with the police officers. The emphasis was on how defendant's statements of his involvement in the criminal activities had changed during the interview. At first, defendant denied being at the crime scene or having any knowledge of the events. Then defendant admitted being in the area with Harrell, but insisted he had no knowledge of what Harrell was planning to do. As the interview progressed, defendant admitted to even greater knowledge of the planned robbery and his involvement therein.

During the prosecutor's recital of defendant's various versions, defense counsel, on three occasions, stated, "Objection, argumentative." The first two objections were overruled, the third was sustained.

There is no claim that the prosecutor misrepresented what the evidence of the defendant's statements would be. Rather, defendant contends the whole matter of defendant's statements to the police was a matter for closing argument only, and inappropriate to the opening statement. No authority is given for this position, and we find it to be without merit. No abuse of judicial discretion has been shown.

## CUMULATIVE ERROR

For his final issue, defendant contends that these alleged errors, when considered cumulatively, require reversal of defendant's conviction. We have found no error and, thus, the cumulative error argument is rendered moot.

The judgment is affirmed.