(39 P.3d 97)

No. 83,602

STATE OF KANSAS, *Appellee*, v. ROBERT L. CAMPBELL, *Appellant*.

Opinion filed January 18, 2002.

*Cory D. Riddle*, assistant appellate defender, *Randall L. Hodgkinson*, deputy appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Boyd K. Isherwood* and *Richard A. Olmstead*, assistant district attorneys, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BEIER, P.J., PIERRON, J., and WAHL, S.J.

BEIER, J.:   Robert L. Campbell appeals his conviction of battery against a law enforcement officer, contending the district court erred by (1) giving a jury instruction that omitted the requisite intent to cause physical contact with another person; (2) failing to give an instruction on general criminal intent; and (3) unconstitutionally imposing an upward durational departure sentence.

Campbell was on suicide watch at the Sedgwick County Detention Center on the morning of the incident giving rise to this case. Campbell started screaming obscenities and urinated on the floor of his cell. This behavior was ignored, but approximately 30 minutes later several members of the staff attempted to deliver medication to Campbell.

Deputy Madaline Magdaleno was standing on the right side of Campbell's door, wearing her sheriff's department uniform. Magdaleno testified Campbell was angry and yelling and threw a cup of liquid on her arm and chest when she tried to hand him his medication.

Deputy David Spears and staff nurse Kathy Clark corroborated this testimony. Clark observed Campbell dip a cup into the toilet stool in his cell, and she backed away from the door because she thought she knew what he planned. She then saw the liquid come flying out of the doorway and land on Magdaleno. Spears also testified Campbell grabbed a Styrofoam cup, dipped it into the toilet, and threw the liquid, which hit the inside of the door and Magdaleno.

Campbell was charged with battery against a law enforcement officer in violation of K.S.A. 2000 Supp. 21-3413(a)(5). In Campbell's first trial, the jury deadlocked. At his second trial, the district court gave the following jury instruction:

"To establish [battery against a law enforcement officer], each of the following claims must be proved:
"1. That Mr. Campbell intentionally caused physical contact with Madaline C. Magdaleno in a rude, insulting or angry manner;
"2. That Ms. Magdaleno was a county correctional officer or employee, and Mr. Campbell was a person confined in the county jail;
"3. That Ms. Magdaleno was engaged in the performance of her duty; and
"4. That this act occurred on or about the 7th day of September, 1998, in Sedgwick County, Kansas.
"As used in this instruction, the State must prove that Mr. Campbell intended to throw the liquid. The State is not required to prove Mr. Campbell intended to throw the liquid onto Ms. Clark, Deputy Magdaleno or Deputy Fletcher."

Defense counsel objected to the last paragraph of this instruction, arguing it removed the necessary element of intent to actually touch a person. Defense counsel also asked the court to give PIK

Crim. 3d 54.01-A, the general criminal intent instruction, to clarify the intent necessary under the statute. The district court responded:

"Okay. Well, 54.0—giving 54.01-A in addition to the last paragraph of 3 isn't going to help you, because the last paragraph of 3 directs the jury's attention to what the intention was. And I'm convinced reading Judge Royse's decision in *State vs. [Esher]*, that in her analysis of this issue that it's not necessary for the State to prove beyond a reasonable doubt that Mr. Campbell intended that the liquid strike either — well, strike anyone, Deputy Magdaleno in particular. So, I'll decline to delete the last paragraph of Instruction Number 3."

Campbell was convicted of battery against a law enforcement officer, and the State filed a motion for an upward durational departure sentence. After a hearing, the district court found Campbell's lack of amenability to rehabilitation, demonstrated by his commission of crimes in the county jail, constituted a substantial and compelling reason for departure. The district court doubled the maximum presumptive term and sentenced Campbell to 82 months' imprisonment.

### Intent Instructions

"When reviewing challenges to jury instructions, we are required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. [Citation omitted.]

"In a criminal action, a trial court must instruct the jury on the law applicable to the defendant's theories for which there is supporting evidence. When considering the refusal of a trial court to give a specific instruction, the evidence must be viewed by the appellate court in the light most favorable to the party requesting the instruction. [Citation omitted.]" *State v. Jackson*, 270 Kan. 755, 760-61, 19 P.3d 121 (2001).

Battery is defined by K.S.A. 2000 Supp. 21-3412(a)(2) as "intentionally causing physical contact with another person when done in a rude, insulting or angry manner." This definition is explicitly incorporated in the statute outlining battery against a law enforcement officer, K.S.A. 2000 Supp. 21-3413. We must decide whether battery against a law enforcement officer requires a showing that the defendant intended to cause physical contact with another per-

son, in Campbell's case, by throwing the liquid. If so, the jury instruction questioned by Campbell should have said so.

The district court believed *State v. Esher*, 22 Kan. App. 2d 779, 922 P.2d 1123, *rev. denied* 260 Kan. 997 (1996), answered the relevant question. In *Esher*, the defendant argued aggravated battery required proof of a specific intent to injure. This court identified a specific intent crime as one whose defining statute, " 'in addition to the intent required by K.S.A. 21-3201, . . . identifies or requires a further particular intent which must accompany the prohibited acts.' " 22 Kan. App. 2d at 782. Under this definition, we said, aggravated battery was not a specific intent crime. 22 Kan. App. 2d at 784, 786.

*Esher* did not actually reach the ultimate legal question in this case: What, exactly, must a battery defendant have had a *general* intent to do? The plain language of the battery statute is clear on this point. The defendant must have possessed the general intent to "caus[e] physical contact with another person." K.S.A. 2000 Supp. 21-3412(a)(2). Mere recklessness is not enough, compare K.S.A. 2000 Supp. 3412(a)(1) (reckless state of mind adequate to prove battery when it leads to bodily harm of another person), but neither must the State have to prove that the defendant had physical contact with a specific individual in mind. It is possible, given the wording of the district judge's comments on the instructions that his intention in including the final paragraph of the elements instruction was to communicate only this last point, that is, that Campbell need not have possessed the intention for the liquid to hit Magdaleno specifically. But the paragraph as written could also be interpreted to mean that Campbell could be found guilty if he merely intended to throw the liquid, without any companion intention that it hit someone other than himself. This reasonable construction of the paragraph's language misstates Kansas law and means the giving of the instruction was error.

We also agree with Campbell that the district court's refusal to give PIK Crim. 3d 54.01-A on general criminal intent compounded the error in the last paragraph of the elements instruction. PIK Crim. 3d 54.01-A provides:

"In order for the defendant to be guilty of the crime charged, the State must prove that (his)(her) conduct was intentional. Intentional means willful and purposeful and not accidental.

"Intent or lack of intent is to be determined or inferred from all of the evidence in the case."

The Notes on Use for PIK Crim. 3d 54.01-A state it should be given only when: (1) the crime requires a general criminal intent; and (2) the defendant's state of mind is a substantial issue in the case. Although Campbell met both elements of this test, this instruction might have been unnecessary had the elements instruction not included its last ambiguous paragraph. Given that error, this instruction could have helped.

In *State v. Eichman*, 26 Kan. App. 2d 527, 989 P.2d 795, *rev. denied* 268 Kan. 850 (1999), we faced a similar issue. In that case, the defendant raised his hand holding a gun when officers surrounded his truck. Defendant claimed he had just picked the gun up off the truck's floorboard and did not realize officers were present. He was convicted of aggravated assault of a law enforcement officer and argued on appeal that the district court erred by not giving PIK Crim. 3d 54.01-A. The more demanding clearly erroneous standard of review applied because the instruction had not been requested at trial.

This court agreed that aggravated assault of a law enforcement officer was a general intent crime and that Eichman had disputed the intent issue. The district court erred by not giving the instruction, we said, but the error was not reversible. The defendant had not shown how a layperson's understanding of intent differed from the definition of intent in K.S.A. 21-3201 or PIK Crim. 3d 54.01-A. 26 Kan. App. 2d at 528-31.

As in *Eichman*, the crime at issue here is a general intent crime, and the defendant's state of mind was a substantial issue in the case. This case differs from *Eichman*, however, not only because of the standard of review but because, to the degree the substance of 54.01-A was present in the elements instruction, it was contradicted or confused by the last paragraph. *Cf. State v. Yardley*, 267 Kan. 37, 43, 978 P.2d 886 (1999) (no error when substance of PIK Crim. 3d 54.01-A included in elements instruction).

Having considered all of the instructions given in Campbell's case together, read as a whole, we are compelled to conclude that they did not properly and fairly state the law as applied to the facts and the jury could reasonably have been misled. Reversal of his conviction is necessary.

## Upward Durational Departure

Campbell argues the district court unconstitutionally imposed an upward durational departure sentence without presenting the facts used for the departure sentence to a jury. The parties agree that *State v. Gould,* 271 Kan. 394, 23 P.3d 801 (2001), controls this issue. Even if Campbell's conviction was affirmed, his sentence would have to be vacated and the case remanded for resentencing.

Reversed and remanded.