(188 P.3d 965)
No. 97,657

STATE OF KANSAS, *Appellee*, v. HAROLD HAWKINS, *Appellant*.

Opinion filed July 25, 2008.

*Janine Cox*, of Kansas Appellate Defender Office, for appellant.

*Kristi L. Barton*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before LEBEN, P.J., MALONE and GREENE, JJ.

GREENE, J.: Harold Hawkins appeals his convictions of aggravated assault, aggravated assault against a law enforcement officer, and criminal possession of a firearm, arguing reversal of the aggravated assault conviction is required because of an erroneous response from the district court to a jury question, multiplicity, insufficiency of the evidence, cumulative trial errors, and sentencing errors. Concluding the district court erred in its response to a jury question, we reverse Hawkins' conviction for aggravated assault and remand for new trial on that charge, but we affirm the remaining convictions.

*Factual and Procedural Overview*

Off-duty Police Officers Carl Lemons and Fongvilay Phommachanh were working security in full uniform at a restaurant in Wichita when they were approached about a skirmish in the parking lot. As the officers moved in response, Phommachanh observed a man walking toward him lifting his hand when he heard a loud bang and saw a flash come from an apparent firearm. Phommachanh called for Lemons and began to chase the man with the gun, identifying himself as a police officer and demanding the man stop and drop the weapon. As the man continued to flee, Phommachanh saw him turn around several times and motion like he was going to shoot at Phommachanh again. Lemons joined the chase, heard gunfire from Phommachanh's service weapon, and eventually shot the fleeing man in the back. The man was identified as Hawkins.

As a result of these events, the State charged Hawkins with four counts: Count I, aggravated assault of Phommachanh as an individual; Count II, aggravated assault of Phommachanh as a law enforcement officer; Count III, aggravated assault of Lemons as a law enforcement officer; and Count IV, criminal possession of a firearm. The jury found Hawkins guilty of Counts I, II, and IV but acquitted him of Count III.

Hawkins moved for a judgment of acquittal and new trial. After allowing argument, the trial court denied both motions. The trial

court then imposed consecutive aggravated sentences for all three convictions, totaling 63 months in prison. Hawkins timely appeals.

*Were Hawkins' Convictions of Aggravated Assault and Aggravated Assault on a Law Enforcement Officer Supported by Sufficient Evidence?*

Hawkins challenges the sufficiency of the evidence to support his convictions of aggravated assault and aggravated assault on a law enforcement officer. "When the sufficiency of the evidence is reviewed in a criminal case, [an appellate] court must consider all of the evidence, viewed in a light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006). A conviction for even the gravest offense may be sustained by circumstantial evidence. Circumstantial evidence is evidence of events or circumstances from which a reasonable factfinder may infer the existence of a material fact in issue. *State v. Lopez*, 36 Kan. App. 2d 723, 725, 143 P.3d 695 (2006). As the finder of fact, the jury is responsible for weighing of the evidence, determining witness credibility, and resolving conflicts in the evidence, and this court will not second guess its performance of such vital tasks. See *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006).

From our review of the record, we conclude there was some conflicting evidence of the details of the incident, but Hawkins' involvement was not placed in serious doubt. The officers testified clearly regarding the Hawkins' movements, shots fired, and being placed in fear of bodily harm as a result of Hawkins' actions. Additionally, a partially loaded but jammed semiautomatic handgun was found on the floor of the vehicle Hawkins was entering as he was shot by Lemons. Ballistics matched one of the six cartridges or shell casings found at the crime scene to that handgun, and a bullet hole was found in the top of the windshield of a car in the parking lot in the vicinity where Phommachanh first observed someone shoot at him. One witness, who was in front of the restaurant at the time of the first shot, heard the shot, testified generally consistent with the officers, and specifically stated that the

individual who fled appeared to be shooting at the officers and at her group of friends.

Hawkins' arguments on appeal highlight evidence suggesting his innocence. For example, he points to evidence presented in his defense which tended to contradict Phommachanh's testimony on direct examination that he thought Hawkins was shooting at him, as opposed to a car. He maintains that Phommachanh's conflicting statements in that regard were insufficient for the jury to find beyond a reasonable doubt that he was guilty of aggravated assault. His claim is similar with regard to evidence of the events that led to the charge of aggravated assault against Phommachanh as a law enforcement officer, which included conflicting witness accounts of Hawkins' actions as he ran from the officers.

We conclude that Hawkins' arguments go to the weight of the respective evidence and the assessment of credibility. We decline to resolve such issues. See *Pham*, 281 Kan. at 1252. We are convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt of aggravated assault resulting from the initial shot fired and of aggravated assault on a law enforcement officer resulting from the balance of Hawkins' actions. His challenge to the sufficiency of the evidence is rejected.

*Did the District Court Err in Responding to a Jury Question on Aggravated Assault, and if so, Was the Error Harmless?*

Hawkins argues the district court erroneously responded to a question from the jury during its deliberations and the erroneous response entitles him to a new trial on his aggravated assault conviction. He makes no similar challenge as to his remaining convictions. This court generally reviews a trial court's response to a jury's question for abuse of discretion. Our appellate courts will find an abuse of judicial discretion only when no reasonable person would take the view adopted by the trial court. *State v. Kendall*, 274 Kan. 1003, 1006, 58 P.3d 660 (2002). However, to the extent Hawkins contends the trial court misstated the law in responding to the jury's question and resolution of the issue calls for statutory interpretation, this court's review of such strictly legal issues is unlimited. See *State v. Jones*, 272 Kan. 674, 677, 35 P.3d 887 (2001).

The important consideration is that the jury be properly instructed on the essential issues presented at the trial, and this is particularly true in a criminal proceeding when the question presented by the jury involves the basic elements of the criminal offense on which the defendant is being tried. *Kendall*, 274 Kan. at 1007.

Instruction 9 directed the jury that to find Hawkins guilty of the aggravated assault of Phommachanh as an individual, the jury had to find, in pertinent part, that "Mr. Hawkins intentionally placed Fongvilay Phommachanh in reasonable apprehension of immediate bodily harm." Both parties focused in their closing arguments upon what the jury had to find—or not find—that Hawkins intended. More than an hour into deliberations, the jury sent a note to the court referencing "Instruction 9, item 1" and asking: "Does aggravated assault require Mr. Hawkins['] target specifically to be Officer Phommachanh?"

The State argued the doctrine of transferred intent applied and suggested the trial court simply refer to its instructions already given. Hawkins argued the question mandated a "yes" response because the jury had to find this was an intentional act against Phommachanh specifically.

Relying on *State v. Eichman*, 26 Kan. App. 2d 527, 989 P.2d 795, *rev. denied* 268 Kan. 890 (1999), the trial court noted that aggravated assault and/or aggravated assault on a law enforcement officer are general intent crimes. The court then explained its understanding that "[t]here has to be an intent to do the act, *but it does not have to be the intent to place someone in immediate apprehension of bodily harm.*" (Emphasis added.) Thus, over defense counsel's objection, the trial court responded by writing below the jury's question: "To be guilty of aggravated assault someone's act must have been intentional. The intentional act must have placed another in reasonable apprehension of immediate bodily harm."

We fundamentally disagree with the district court in its belief that the intent necessary "does not have to be the intent to place someone in immediate apprehension of bodily harm." This was a serious misstatement of the law. See K.S.A. 21-3408 (assault). Although aggravated assault is a general intent crime, the general intent necessary requires proof that the defendant intentionally

placed another person in immediate apprehension of bodily harm. *Eichman*, 26 Kan. App. 2d at 522-30; see K.S.A. 21-3410 (aggravated assault); K.S.A. 21-3411 (aggravated assault on a law enforcement officer). The district court's response changed this essential intent element of assault by stating that "someone's act must have been *intentional*" and that the intentional act "must have placed another in reasonable apprehension of immediate bodily harm." The response misled the jury to the extent it required only an undefined intentional act, such as the general firing of a weapon, and that this act had the *result* of placing someone in apprehension of bodily harm. Under the plain language of K.S.A. 21-3408, an "assault" defendant must possess the general intent to "place another person in reasonable apprehension of immediate bodily harm." The district court's response effectively eliminated this element of the charged offense of aggravated assault.

Instructive to our analysis is our court's decision in *State v. Campbell*, 30 Kan. App. 2d 70, 39 P.3d 97, *rev. denied* 273 Kan. 1037 (2002), where the question framed was the general intent necessary for battery against a law enforcement officer under K.S.A. 2000 Supp. 21-3413. In *Campbell*, the defendant threw water from his jail cell toilet toward two deputies (Magdaleno and Fletcher) and a staff nurse (Clark) as they attempted to deliver medication to the defendant. The water hit one of the deputies, resulting in charges against the defendant in violation of K.S.A. 2000 Supp. 21-3413. The *Campbell* court noted K.S.A. 2000 Supp. 21-3412(a)(2) defines "battery," as used in K.S.A. 2000 Supp. 21-3413, as " 'intentionally causing physical contact with another person when done in a rude, insulting or angry manner' " and battery and battery against a law enforcement officer are general intent crimes. 30 Kan. App. 2d at 72-74.

At issue in *Campbell* was the propriety of the trial court's aggravated battery instruction. The instruction included language generally tracking the battery statute in that it provided the State had to prove Campbell "intentionally caused physical contact with [Deputy] Magdaleno in a rude, insulting or angry manner." The source of controversy was the trial court's addition of a paragraph to the instruction that provided: " 'As used in this instruction, the

State must prove that Mr. Campbell intended to throw the liquid. The State is not required to prove Mr. Campbell intended to throw the liquid onto Ms. Clark, Deputy Magdaleno or Deputy Fletcher.' " 30 Kan. App. 2d at 71.

The *Campbell* court defined the ultimate legal question before it as: "What, exactly, must a battery defendant have had a *general* intent to do?" 30 Kan. App. 2d at 73. The *Campbell* court concluded that the plain statutory language clearly required that the battery defendant

"must have possessed the general intent to 'caus[e] physical contact with another person.' K.S.A. 2000 Supp. 21-3412(a)(2). Mere recklessness is not enough . . ., but neither must the State have to prove that the defendant had physical contact with a specific individual in mind. . . . [The defendant] need not have possessed the intention for the liquid to hit Magdaleno specifically." 30 Kan. App. 2d at 73.

Because the jury could reasonably have been misled, this court reversed the defendant's battery against a law enforcement officer conviction and remanded the case. 30 Kan. App. 2d at 73-75.

Similarly, we must conclude that the district court's response to the jury's question was not harmless. Here, the court's response misstated the intent element required for aggravated assault and likely misled the jury. See *State v. Kunellis*, 276 Kan. 461, 473, 78 P.3d 776 (2003). Accordingly, we must reverse Hawkins' conviction of aggravated assault and remand for a new trial on this charge.

*Were Hawkins' Convictions of Aggravated Assault and Aggravated Assault on a Law Enforcement Officer Multiplicitous?*

Hawkins next contends that his convictions for the aggravated assault against Phommachanh as an individual and the aggravated assault against Phommachanh as a law enforcement officer violated his constitutional right to be free from double jeopardy. We address this issue despite our reversal of the aggravated assault conviction because if it is meritorious, no retrial would be necessary.

Hawkins acknowledges that he did not raise the multiplicity issue at trial. Nonetheless, he properly notes that our appellate courts consider multiplicity issues raised for the first time on appeal to serve the ends of justice or to prevent a denial of a fundamental

right. See, *e.g.*, *State v. Simmons*, 282 Kan. 728, 743, 148 P.3d 525 (2006).

Whether the State violated Hawkins' protections against double jeopardy and multiplicity are questions of law subject to unlimited review. *State v. Schoonover*, 281 Kan. 453, 462, 133 P.3d 48 (2006). Multiplicity is the charging of a single offense in several counts of a complaint or information, which may violate the federal and state Constitutions' protections against double jeopardy. 281 Kan. at 475. The *Schoonover* court held that "the single act of violence/ merger analysis should no longer be applied when analyzing double jeopardy or multiplicity issues in multiple description cases where a defendant has been convicted . . . of multiple statutes arising from the same course of conduct." 281 Kan. at 493. Thus, this court's inquiry to determine if convictions are for the same offense involves two components, both of which must be met for there to be a double jeopardy violation: "(1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one?" 281 Kan. 453, Syl. ¶ 15.

To answer the first question, "[i]f the conduct is discrete, *i.e.*, committed separately and severally, the convictions do not arise from the same offense and there is no double jeopardy violation." 281 Kan. at 496. The parties dispute whether the Hawkins' conduct was unitary. *Schoonover* identified four factors to be considered in answering this question:

"(1) [W]hether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 281 Kan. at 497.

Hawkins summarily argues the charges against him for the aggravated assault of Phommachanh as an individual and against Phommachanh as a law enforcement officer stemmed from one uninterrupted incident that lasted only a few minutes so the charges "were undoubtedly based on the same unitary conduct."

We reject Hawkins' multiplicity argument because the challenged convictions did not proceed from the same conduct. Rather, the facts detailed above demonstrate that discrete conduct resulted

in the separate charges of the aggravated assault of Phommachanh and the aggravated assault of Phommachanh as a law enforcement officer. Hawkins first pointed and fired a gun toward Phommachanh as he and several others stood outside in front of the crowded restaurant. Shortly thereafter, Officers Phommachanh and Lemons chased Hawkins down the street, repeatedly identifying themselves as police officers as they commanded Hawkins to stop. As the chase continued, Hawkins turned around and acted as if he was going to shoot at Phommachanh.

Hawkins' actions clearly did not occur at the same time or location. Moreover, there was an intervening event—Phommachanh identified himself as a police officer and Hawkins turned around to run away. Hawkins' subsequent decision to turn around while running and motion as though he was going to shoot Phommachanh was a fresh impulse beyond the earlier event of frightening Phommachanh by shooting toward him as he stood in front of the Denny's. Accord *State v. Gomez,* 36 Kan. App. 2d 664, 674, 143 P.3d 92 (2006) (discussing an intervening event and fresh impulse on similar facts in holding that convictions for aggravated assault and criminal discharge of a firearm at an occupied vehicle were not multiplicitous because they did not proceed from the same conduct).

Because Hawkins' actions did not proceed from the same conduct, his convictions were not for the same offense so there was no violation of the Double Jeopardy Clause.

*Was Hawkins Denied a Fair Trial by Reason of Cumulative Error?*

Hawkins next claims that cumulative trial error denied him a fair trial as guaranteed by the United States Constitution. We recognize that cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him or her a fair trial. *State v. Lumbrera,* 252 Kan. 54, 57, 845 P.2d 609 (1992).

Here, the only error we have found among Hawkins' challenges was an error related specifically to his conviction for aggravated assault. Based upon that error, we have reversed his conviction for

this charge and remanded for a new trial. We have not found there to have been any other error to be considered in a cumulative error analysis and therefore reject Hawkins' challenge to cumulative error. *State v. Davis*, 283 Kan. 569, 583, 158 P.3d 317 (2007); *State v. Anthony*, 282 Kan. 201, 217, 145 P.3d 1 (2006).

*Did the District Court Err in Sentencing Hawkins Based on a Criminal History Not Proven to a Jury Beyond a Reasonable Doubt?*

Hawkins also contends the trial court erred by considering his prior convictions to score his criminal history for sentencing purposes without submitting those convictions to a jury to be proven beyond a reasonable doubt. He claims such a practice violates the principles of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

Hawkins acknowledges this same argument was rejected in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). However, he suggests that our Supreme Court's reliance therein on *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998), "is somewhat weakened" in light of Justice Thomas' concurring opinion in *Shepard v. United States*, 544 U.S. 13, 26-28, 161 L. Ed. 2d 205, 125 S. Ct. 1254 (2005), which questioned the continuing viability of *Almendarez-Torres*.

Absent some indication that the Kansas Supreme Court is departing from its position in *Ivory*, this court is duty bound to follow that precedent. See *State v. Beck*, 32 Kan. App. 2d 784, 788, 88 P.3d 1233, *rev. denied* 278 Kan. 847 (2004). Our Supreme Court has given no indication of any departure from its decision in *Ivory*, and, in fact, it continues to uphold *Ivory*. See, *e.g. State v. Storey*, 286 Kan. 7, Syl. ¶ 4, 179 P.3d 1137 (2008) (no persuasive reason given for the court to retreat from its position in *Ivory*); *State v. Gonzalez*, 282 Kan. 73, 114-18, 145 P.3d 18 (2006). Accordingly, Hawkins' *Apprendi* violation argument must be rejected.

*Does this Court Have Jurisdiction to Consider Hawkins' Remaining Challenge to his Presumptive Sentences?*

Hawkins next argues the trial court violated his Sixth and Fourteenth Amendment rights under the United States Constitution by

imposing the aggravated sentencing number for each of his convictions without submitting the aggravating factors to a jury to be proven beyond a reasonable doubt as required by the United States Supreme Court in *Cunningham v. California*, 549 U.S. 270, 166 L. Ed. 2d 856, 127 S. Ct. 856 (2007). Hawkins maintains that the mid-number in the Kansas sentencing grid box is the maximum presumptive sentence and if the court imposes the aggravated number, it must submit the aggravating facts to a jury. The State correctly responds that this court lacks jurisdiction to review a presumptive sentence on direct appeal.

Pursuant to K.S.A. 21-4704(f), the three numbers contained within a sentencing guidelines grid box constitute the range for a presumptive sentence. K.S.A. 21-4721(c)(1) expressly forbids this court from reviewing a presumptive sentence. In *State v. Lewis*, 27 Kan. App. 2d 134, 140-42, 998 P.2d 1141, *rev. denied* 269 Kan. 938 (2000), a panel of this court held that because this court lacks jurisdiction to consider such a claim on direct appeal, a challenge to the constitutionality of a presumptive sentence must be brought in a K.S.A. 60-1507 motion. Other panels of this court have likewise dismissed *Cunningham* challenges to the imposition of aggravated sentencing terms for lack of jurisdiction. See *State v. Walker*, No. 97,213, unpublished opinion filed February 15, 2008, *rev. denied* 286 Kan. 1185 (2008); see also *State v. McHone*, No. 97,748, unpublished opinion filed February 29, 2008, *rev. denied* 286 Kan. 1183 (2008) (noting this court's consistent recognition of the tension between our statutory jurisdiction limitation and the potential gravity of the constitutional *Cunningham* issue and adopting the reasoning of *Lewis* until our Supreme Court resolves such tension). For these reasons, we dismiss Hawkins' challenge to his presumptive sentences.

In summary, we reverse Hawkins' conviction and sentence for aggravated assault, we affirm his remaining convictions, we reject his *Apprendi* argument, and we dismiss his challenge to his presumptive sentences. We remand for a new trial on the aggravated assault charge. Because the conviction reversed was not the primary crime among multiple convictions, we conclude K.S.A. 21-4720(b)(5) is inapplicable, and there need be no resentencing on the convictions affirmed. See *State v. Heath*, 264 Kan. 557, 571-

72, 592, 957 P.2d 449 (1998); *State v. Spangler*, 38 Kan. App. 2d 817, 839, 173 P.3d 656 (2007).

Convictions affirmed in part and reversed in part, appeal dismissed in part, and case remanded with directions.

LEBEN, J., dissenting in part: Under K.S.A. 21-4720(b), a district judge has discretion to make the sentences either concurrent or consecutive in a multiple-conviction case. Concurrent sentences all share the same clock; the defendant serves only the longest sentence as less serious ones tick away alongside it. Consecutive sentences are a string of separate clocks; time doesn't begin to count on a second sentence until the first one is fully served, which results in a lengthier time in custody.

Despite the importance of this issue, the district court is not required to give reasons for it—and the district court's decision to make sentences consecutive ordinarily is not appealable. See *State v. Flores*, 268 Kan. 657, 660, 999 P.2d 919 (2000); *State v. Thorpe*, 36 Kan. App. 2d 475, 478, 141 P.3d 521, *rev. denied* 282 Kan. 796 (2006).

I cannot agree with the majority on the single issue of whether the district court must resentence the defendant after one of the underlying convictions has been reversed. We do not know—and the district court is not required to explain—why Hawkins received consecutive sentences. Perhaps the district judge concluded that two aggravated-assault convictions and the illegal possession of a firearm merited consecutive sentences, but perhaps that same district judge would conclude that one aggravated-assault conviction and the conviction for the illegal possession of a firearm did *not* merit consecutive sentences. Kansas law has long recognized that whether to issue consecutive sentences in a multiple-conviction case is all part of a single sentencing decision. I would include an explicit direction for resentencing Hawkins on remand here so the district judge could reconsider consecutive or concurrent sentencing as it is within the district judge's discretion, not ours, to decide that.

To place the issue in context, let's review the procedure for how Hawkins' sentence was determined with his multiple convictions.

In a multiple-conviction case, the most serious conviction is deemed the base or primary sentence, and the sentence for that crime is calculated based upon the defendant's full criminal history. Hawkins' most serious offense, the aggravated assault on a law-enforcement officer, was the base sentence, and its potential sentencing range is determined by Hawkins' criminal history. Hawkins had the second-highest criminal-history score, B, which means that he could be sentenced to 37, 39, or 41 months in prison for that conviction. In contrast, if Hawkins had no previous convictions, a score of I, the sentence would have ranged from 17 to 19 months.

In a multiple-conviction case, the sentencing range for convictions other than the base sentence is generally determined without regard to the defendant's criminal history. Hawkins, then, was treated as if he had a criminal-history score of I for the other offenses, which gave him a sentencing range from 11 to 13 months for aggravated assault and from 7 to 9 months for illegal possession of a firearm. The district judge has the discretion to choose a sentence within that range for each offense and to then decide whether the sentences will run concurrently or consecutively. The district judge in this case gave Hawkins the maximum sentence for each offense and ran all of the sentences consecutively.

If Hawkins had only been convicted of two of the charges, would the judge have still run the sentences consecutively? We have no way of knowing. But we can say with certainty that the judge would have acted well within his discretion whichever way he had decided.

After a judge has exercised that discretion, a defendant with multiple convictions may still appeal from the underlying convictions, and there are several possible situations when one or even two of those convictions are reversed on that appeal. Let's consider those possibilities, and then we can place both Hawkins' case and a situation that's explicitly covered by statute in context. In the examples listed below, I have accounted for either affirmance or reversal and for either concurrent or consecutive sentences for each of three offenses:

| Example | Base-sentence Conviction | Non-base-sentence Conviction | 2nd Non-base-Sentence Conviction | Consecutive or Concurrent Sentences | Total Convictions After Appeal |
|---------|--------------------------|------------------------------|----------------------------------|-------------------------------------|--------------------------------|
| A | Affirmed | Affirmed | Reversed | Consecutive | 2 |
| B | Affirmed | Reversed | Affirmed | Consecutive | 2 |
| C | Reversed | Affirmed | Reversed | Consecutive | 1 |
| D | Reversed | Reversed | Affirmed | Consecutive | 1 |
| E | Affirmed | Affirmed | Reversed | Concurrent | 1 |
| F | Affirmed | Reversed | Affirmed | Concurrent | 2 |
| G | Reversed | Affirmed | Reversed | Concurrent | 1 |
| H | Reversed | Reversed | Affirmed | Concurrent | 1 |

Resentencing would be needed when the base-sentence conviction is reversed (examples C, D, G, and H) because the defendant's full criminal-history score is only applied against that base sentence. If Hawkins' base-sentence conviction had been reversed, he would need to be resentenced so that his new base sentence, the aggravated-assault conviction, could be recalculated with his full criminal history. In that case, the new sentencing range for that conviction would have been from 27 to 31 months rather than 11 to 13 months, which was previously used when Hawkins was sentenced with a different base-sentence conviction.

The legislature has explicitly provided for resentencing when the base-conviction sentence is reversed in K.S.A. 21-4720(b)(5):

"In the event a conviction designated as the primary crime in a multiple conviction case is reversed on appeal, the appellate court shall remand the multiple conviction case for resentencing. Upon resentencing, if the case remains a multiple conviction case the court shall follow all of the provisions of this section concerning the sentencing of multiple conviction cases."

So the legislature has *required* resentencing in the examples I've labeled C, D, G, and H. But does this mean that a remand for resentencing is *prohibited* in all other cases? I think not.

Two of the remaining situations—examples E and F—would not need to be remanded for resentencing. In these cases, the district court chose concurrent sentences from the outset. There is no rea-

son to believe that the district court would have made the sentences consecutive with even fewer convictions. And in these hypothetical cases, the base sentence was not reversed, so the sentences don't need to be recalculated since the base sentence remains the same.

But in the other two remaining hypothetical situations—examples A and B—a remand for resentencing still makes sense. Like Hawkins' case, the base-sentence conviction was affirmed in both cases, but one other conviction was reversed. In addition, the sentences had run consecutively. In this circumstance, there is simply no way to know whether the district court would have acted differently had there been fewer convictions because the district court is not required to explain the use of its own discretion in making that choice.

The majority would conclude that the legislature considered all of the possible hypothetical cases and intended a remand *only* when the base-sentence conviction was reversed. When one considers all of the possible hypotheticals in multiple-conviction cases—including the additional possibilities with more than 3 convictions or when some, but not all, sentences are run consecutively—it makes no sense for the legislature to try to cover all of the possibilities by statute. We should not conclude that it tried to do so from the language it used in K.S.A. 21-4720(b)(5).

This conclusion is supported by Kansas caselaw. A 1931 Kansas Supreme Court case, *State v. Woodbury*, 133 Kan. 1, 2, 298 P. 794 (1931), concluded that a defendant in a multiple-conviction case should be resentenced on "all the counts, those where there was no mistake as well as those in which a mistake was found." The court based its conclusion both on the statute then in effect and a "well-established rule" that

"the sentence on any or all of the counts running concurrently or consecutively must apply to a single sentence delivered at one time only and covering all the counts on which conviction was had. Whatever concurrent or consecutive features or elements there may be prescribed by the court must all be a part of the one sentence imposed and pronounced by the court on one date only and at one time." 133 Kan. at 2.

The result I would reach is consistent with the teaching of *Woodbury*. In any situation in which a resentencing *might* make sense,

one would be required to ensure that the decision on sentencing on all counts would occur at only one time, including whether they would run concurrently or consecutively. In Hawkins' case, if he is convicted on retrial of the aggravated-assault charge, the majority would have the district court sentence him on that charge long after he was sentenced on the other convictions. More important, if he is acquitted on retrial, Hawkins would lose the opportunity to have the district court consider whether to make the sentences concurrent or consecutive without the taint of an additional conviction that, in a fair retrial, was not warranted.

Although *Woodbury* arose under earlier statutes, its rationale is still valid, and the case was cited as recently as 2 years ago in *State v. Snow*, 282 Kan. 323, 342, 144 P.3d 729 (2006), where the court cited it for the proposition that only a single judgment declaring the full measure of the sentence should be announced in a multiple-conviction case.

The cases cited by the majority do not trump *Woodbury*. *State v. Heath*, 264 Kan. 557, 957 P.2d 449 (1998), involved only two convictions. The court affirmed one and reversed the other; the conviction for felony murder was upheld, and it carried a mandatory sentence of life in prison. 264 Kan. at 571-72, 592. Surely that was a case in which resentencing was not needed. *State v. Spangler*, 38 Kan. App. 2d 817, 173 P.3d 656 (2007), involved four convictions. Two of them were reversed, leaving two convictions. The court ordered a resentencing on the most serious charge, manufacturing of methamphetamine, as a severity-level-4 drug felony rather than as a severity-level-1 drug felony. 38 Kan. App. 2d at 839. Neither the court's opinion nor the parties' briefs say whether the original sentences had run consecutively or concurrently, but the answer appears to be that they were run concurrently. The defendant had been sentenced to 154 months in prison, a number within the sentencing grid box for a severity-level-1 drug felony for a defendant with no criminal history. If any of the sentences had run consecutively, the defendant's total sentence probably would have exceeded that number. Further, neither *Heath* nor *Spangler*—nor any other recent case—discusses the question addressed here.

Nothing in K.S.A. 21-4720(b)(5) precludes a remand in the circumstances that I've discussed, and the statute's own language as previously quoted also supports this conclusion. The legislature began the second sentence "[U]pon resentencing," rather than "upon that resentencing" or "upon this resentencing." Thus, the second sentence of the statute may be read more broadly than the first, which is in line with *Woodbury*. Under this reading, "[u]pon resentencing," whether required by statute or by the sort of circumstances discussed here, the court must follow the provisions for sentencing in multiple-conviction cases. The rest of the statutory provisions clearly presume that the sentence for all of the convictions in a multiple-conviction case will be announced and decided as a package, which *Woodbury* suggests is the "well-established rule." See also *People v. Burbine*, 106 Cal. App. 4th 1250, 1259, 131 Cal. Rptr. 2d 628 (2003) (holding that on remand in a multiple-conviction case in which one conviction is reversed, the trial judge has the authority on remand to reconsider the sentence on all counts); *People v. Hill*, 185 Cal. App. 3d 831, 834, 230 Cal. Rptr. 109 (1986) (concluding that resentencing on all charges is required when one conviction is reversed because an "aggregate prison term is not a series of separate independent terms, but one term made up of interdependent components").

On remand, the district court should be required to resentence Hawkins once any retrial on the aggravated-assault charge has been completed. At that time, if Hawkins is acquitted of this charge, the district judge should consider whether consecutive sentences would be appropriate with only two convictions, a situation not previously considered. If Hawkins is again convicted of the aggravated-assault charge, the district judge still should resentence and use the additional knowledge gained at retrial, which is a result consistent with the teaching of *Woodbury* and *Snow*. Sentencing in a multiple-conviction case comprises but a single judgment, and that single judgment should be rendered at a single time, with full consideration of the information available to the court.