No. 93,627

STATE OF KANSAS, *Appellee*, v. TYREE R. CONWAY, *Appellant.*

(159 P.3d 917)

Opinion filed June 8, 2007.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Paul J. Morrison*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Tyree Conway appeals from his convictions of first-degree, felony murder based on the criminal discharge of a firearm and criminal discharge of a firearm at an occupied vehicle. The

defendant assigns the following errors, which he claims require this court to reverse his convictions: (1) Prosecutorial misconduct during closing argument; (2) failure to provide a limiting instruction concerning gang evidence; (3) failure to instruct that the shot killing the victim must have come from outside the vehicle to support the underlying felony for felony murder; (4) multiplicity of charges; and (5) cumulative error. We conclude that no reversible error occurred and affirm.

Facts

In May 2004, the defendant was convicted of first-degree, felony murder for the killing of Maurice Johnson, based on the underlying crime of criminal discharge of a firearm at an occupied vehicle. The defendant was also convicted of criminal discharge of a firearm at an occupied vehicle, resulting in injuries to Michael Anderson.

The State's lead witness in its case against the defendant was Rachel Bell, a long-time acquaintance of the defendant and Anderson. Bell testified that on April 25, 2003, she had been at her friend Britteny Strong's house at a party. The defendant was also present. Most of the people at the party, including Bell and the defendant, were members of several Crips' gangs. Bell testified that she was a Neighborhood Crip, while the defendant was a 357 Crip. Bell explained that a number of people were drinking alcohol and doing various drugs at the party; she stated that she was under the influence of a number of drugs that night, including alcohol, cocaine, marijuana soaked in embalming fluid, and acid.

During the evening, Bell noticed the handle and hammer of a gun sticking out of the defendant's inside coat pocket. Although Bell did not specifically identify the type of gun that she saw, she later picked out a picture of a revolver and indicated that was the gun she had seen in the defendant's pocket.

Later that evening, Strong called Anderson, an acquaintance of both Strong and Bell, and asked him to bring Bell and her marijuana. Bell testified that although she did not know it until that night, Anderson was a member of the Bloods, the Crips' rival gang.

Sometime after midnight, Anderson pulled into Strong's driveway with Johnson and Jermaine "Bucket" Powell; Johnson was sit-

ting in the passenger seat, and Powell was in the backseat on the passenger side. All three men were wearing red, indicating that they were members of the Bloods. However, the evidence at trial established that Powell was in fact a member of another gang, the Folks. Detective James Hosty, a police detective who testified as an expert on gang-related activity, explained that "[t]ensions were particularly high at that time" between the Bloods and Crips.

When Anderson pulled into the driveway, Bell and a number of other people including the defendant were standing on Strong's porch and in her front yard. Bell went to the driver side window to talk with Anderson; the defendant and a few other people went to the passenger side. Bell testified that the defendant was talking with Johnson through the passenger window.

Sheema Wilkins, the defendant's cousin, was leaving the party with friends at about the same time that Anderson's car arrived. She testified that although a number of people were standing around the car, she could clearly see the defendant's face in the passenger-side window.

One of the people standing behind the defendant asked Powell, who had at one time been a Crip, why he was in the car with "slob ass niggas." Bell testified that the Crips used the term "slob" as a sign of disrespect toward the Bloods. She stated that after this remark was made, Johnson spit at the defendant; the defendant responded to Johnson by saying "words to the effect of fuck you, cuz."

After this exchange, Powell told Anderson that they needed to leave. Anderson turned off his dome light and began to back out of the driveway. At that point, someone opened fire on the vehicle from the outside. Johnson turned as if he was trying to get into the backseat; he was shot several times in the back. Anderson was also shot in the side. Anderson drove quickly to the hospital; when he arrived, the doctors pronounced Johnson dead. Anderson was admitted to the hospital and treated, and eventually he recovered from his wound.

After the shots were fired, a few people who had been standing on the passenger side of Anderson's car took off running down the street. Two witnesses who were in the neighborhood but not at the

party testified that they saw three people running and that one of them had a ponytail; the defendant had been wearing his hair in a ponytail that night. One witness indicated that the men were running toward Lorraine Street; the defendant's house was located on that street.

When police officers arrived at Strong's house to investigate, they took a number of the people who were there to the police station for questioning, including Bell. Bell initially made a statement that she had been inside the house the entire time and had not been outside when Anderson was there or when the shots were fired. However, both Strong and Anderson indicated that someone named "Rachel" had been outside and may have witnessed the shooting. When she was pulled aside in the lobby of the police station and again asked by a detective whether she had seen the shooter, she stated that the detective could not understand "how her lifestyle was"; she then stated that the "trigger man" was "Squirrel." "Squirrel" was the defendant's nickname.

Bell was then taken back to the interview room and provided a second videotaped account of what happened, this time indicating that the defendant was the shooter. Bell stated that she knew that the defendant was the shooter "because of the gun," but she did not see the shooter's face. Bell also apologized about lying in her earlier interview.

Early that morning the police went to the defendant's home to take him into custody. The defendant told the police that he had gone out the night before but had returned home early and had gone to bed before midnight.

Anderson testified that he and the defendant had known each other since grade school and that the defendant's grandmother used to take care of both boys after school. Until the time of the incident, the defendant had been on good terms with both Anderson and Johnson; Johnson had been casually dating the defendant's sister at the time.

Johnson died as a result of five bullet wounds, one of which had penetrated his lungs and heart. Three shots had been fired through the windshield; it was the State's position that the other two shots came in through the passenger-side window, which was open about

8 1/2 inches from the top. A forensic firearm expert testified that the shots had been fired from a revolver because no shell casings were found at the scene.

The defendant's first trial culminated in a mistrial as a result of a hung jury. In this second trial, the jury returned a guilty verdict against the defendant for both criminal discharge of a firearm and felony murder. He was sentenced to life imprisonment for felony murder plus 34 months for the criminal discharge of a firearm conviction, with parole eligibility in 20 years plus 34 months.

### I. *Did the State commit prosecutorial misconduct by misstating facts in its closing argument?*

The defendant claims that the prosecutor misstated important facts during closing argument. In particular, the defendant asserts that the prosecutor erroneously stated that two pieces of evidence against him were "uncontroverted": First, that the defendant was alone at the passenger-side window of Anderson's car next to Johnson; and second, that the defendant had a gun with him during the party. The defendant argues that both of these pieces of evidence *were* controverted and that the State's claim that the evidence was uncontroverted misled the jury as to the weight of the evidence against the defendant.

### *Standard of Review*

Appellate review of an allegation of prosecutorial misconduct requires a two-step analysis. First, an appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, the appellate court decides whether those comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Swinney*, 280 Kan. 768, 779, 127 P.3d 261 (2006). In the second step of this two-step analysis, the appellate court considers three factors:

"(1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence is of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors, unless the

harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman* [*v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) (conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial)], have been met. [Citations omitted.]" 280 Kan. at 780.

## Analysis

Because "[i]t is the duty of the prosecutor in a criminal matter to see that the State's case is properly presented with earnestness and vigor and to use every legitimate means to bring about a just conviction," prosecutors are given wide latitude in arguing the cases before them. *State v. Ruff*, 252 Kan. 625, 634, 847 P.2d 1258 (1993). "Inherent in this wide latitude is the freedom to craft an argument that includes reasonable inferences based on the evidence." *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000).

However, the "wide latitude" allowed prosecutors is not limitless. In particular, this court has stated that during "closing argument, the prosecutor may draw reasonable inferences from the evidence *but may not comment upon facts outside the evidence.* [Citation omitted.]" *State v. McCray*, 267 Kan. 339, 351, 979 P.2d 134 (1999). As we explained in greater detail in *State v. Ly*, 277 Kan. 386, Syl. ¶ 4, 85 P.3d 1200, *cert. denied* 541 U.S. 1090 (2004):

"The fundamental rule for closing arguments is that the prosecutor must confine his or her remarks to matters in evidence. It is clearly improper for the prosecutor to state facts that are not in evidence. When the prosecutor argues facts that are not in evidence, the first prong of the prosecutorial misconduct test is met, and an appellate court must consider whether the misstatement of fact constitutes plain error."

When a defendant claims that a prosecutor committed reversible misconduct, the prejudicial nature of alleged errors are analyzed in the context of the trial record as a whole. *State v. Whitaker*, 255 Kan. 118, 134, 872 P.2d 278 (1994).

The defendant did not object at any time to the prosecutor's statements; however, when a defendant's claim for prosecutorial misconduct implicates his or her right to a fair trial, this court reviews the alleged misconduct the same regardless of whether an objection was made. *Swinney*, 280 Kan. at 779. This court has previously explained that a defendant's right to a fair trial is impli-

cated when the prosecutor misstates facts or states facts not in evidence. *Ly*, 277 Kan. at 392-93.

*Placement at the Passenger-Side Window*

The prosecutor made the following statements during closing argument regarding the defendant's position at the passenger window of Anderson's vehicle before the shooting:

"We also know that Tyree Conway was standing at the passenger window of Mike Anderson's car alone. He was there alone. Rachel Bell says that she saw him there, standing directly by that window alone. And Sheema Wilkins, the defendant's own cousin, and real cousin, not just gang family member, Sheema Wilkins says I saw him there, he was standing directly next to that passenger window by himself. There has been no evidence to the contrary, nothing has been introduced that disputes that. Sheema Wilkins and Rachel Bell put him there by himself. Now, there are other unknowns milling about the car, but he's the only one by the window."

Contrary to the defendant's argument, both Bell and Wilkins testified at trial that he was the only person standing directly at the passenger-side window talking to Johnson. While both girls also testified that there were a number of people standing *behind* the defendant and wandering about the passenger side of the car, the defendant was the only person whom the girls identified as standing at the passenger-side window and leaning on the car by the window. The prosecutor stated that both Bell and Wilkins testified that the defendant was "standing *directly* next to that passenger window." (Emphasis added.) Thus, the prosecutor did not misstate the facts or draw impermissible inferences from evidence not in the record. The defendant's claim of prosecutorial misconduct fails.

*Possession of a Gun*

The prosecutor also made the following statements regarding Bell's testimony that she had seen a gun poke out of the defendant's inside jacket pocket earlier in the evening before the shooting:

"It was a revolver that was used in this case to murder Maurice Johnson. And we also know that Tyree Conway, the defendant, had a gun at the party. Now, there is only evidence of two, Rachel Bell mentioned briefly in this videotaped interview that some guy, another unknown, she didn't know, know he's a Crip, had a pearl-handled duece duece [*sic*], a pearl-handled .22 caliber pistol at the party. This was not a .22 that was used, it was not that gun.

"But we do know that Tyree Conway had a gun. That is undisputed, that is uncontroverted and the only evidence is that he had a gun. And maybe there is this pearl-handled .22 floating around somewhere, but he had a gun, he had a revolver. Now, the defense had a few exhibits. Defendant's Exhibits A, B and C, because you remember Rachel told a few different stories, at one point you heard that she said it was a tech nine, but you know later she backed off of that and said that it was another revolver.

"The defense had some exhibits where they were trying to show some semi-automatics and argue that the little spike at the end of the handle was a curve; however, the one thing we know, Defendant's Exhibit C, that's the only exhibit that Rachel looked at, said that's it and signed her name. It's right there on the piece of paper, Rachel, she signed her name to this defense exhibit of a revolver. Now, when you're thinking about that, think about why the defense would so despartely now try to back off of the fact that it's a revolver, even though Rachel Bell says it is."

The defendant argues that it was misconduct for the prosecutor to state that "we do know that Tyree Conway had a gun. *That is undisputed, that is uncontroverted and the only evidence is that he had a gun.*" (Emphasis added.) He argues that this point *was* disputed, so it was improper for the prosecutor to characterize it differently during closing argument. In particular, the defendant contends that Bell's testimony regarding the gun was controverted by the fact that there was some dispute as to the color of coat he was wearing that night. Bell testified that the defendant was wearing a blue coat, whereas Wilkins testified that the defendant was wearing a cream-colored coat the night of the party. In addition, Wilkins stated that when she saw the defendant earlier in the evening, the two cousins wrestled with one another, and Wilkins did not notice any heavy objects in his coat at that time.

The State responds that the evidence cited by the defendant does not actually cast doubt on Bell's testimony regarding the gun. In addition, the State argues that the defense's position at trial was that Bell misidentified the gun as a revolver, not that the defendant did not have a gun at all.

The State's arguments are convincing. The dispute regarding the color of the defendant's jacket on the night of the shooting does not lead to a conclusion that he was not carrying a gun in his pocket; instead, it creates a question regarding Bell's memory of the events. The only evidence presented by the defendant during trial that

could possibly dispute Bell's testimony was Wilkins' testimony that she did not feel anything heavy when she wrestled with her cousin. However, this statement by Wilkins does not controvert the fact that Bell later saw a handle of a gun, later identified by Bell as a revolver, peeking out of the defendant's coat pocket. As the prosecutor explained in closing argument, this evidence remains undisputed.

The prosecutor's statements were based on reasonable inferences regarding the evidence presented at trial and thus do not constitute prosecutorial misconduct.

II. *Did the trial court commit clear error when it failed to provide the jury with a limiting instruction regarding the effect of gang evidence?*

The defendant did not request a limiting instruction at trial regarding the effect of gang evidence, but he claims on appeal that the trial court committed clear error when it failed to provide a limiting instruction to the jury regarding the State's evidence of the gang affiliations of the defendant, several witnesses, and the victims.

The State filed its pretrial motion to admit the gang evidence in question, and at a hearing on that motion, the defendant objected to the admission of gang evidence on the grounds that the prejudicial nature of the evidence outweighed its probative value. However, because the defendant did not renew his objection to that evidence at trial, the question of the evidence's admissibility has not been presented for appeal. See K.S.A. 60-404; *State v. Franklin*, 280 Kan. 337, 340, 121 P.3d 447 (2005) (motion in limine); *State v. Torres*, 280 Kan. 309, 319, 121 P.3d 429 (2005) (Confrontation Clause). The State argues that the defendant is attempting to use the jury instruction issue to circumvent his failure to raise an objection at trial. While there is merit to the State's argument, we elect to address the defendant's instructional claim.

*Standard of Review*

" 'It is well established that this court reviews a trial court's failure to give an instruction by a clearly erroneous standard where the party *neither requested the instruction nor objected to its omis-*

*sion.*' [Citation omitted.]" *State v. Pabst,* 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002); see K.S.A. 2006 Supp. 22-3414(3). "An instruction is clearly erroneous when a reviewing court reaches a firm conviction that, if the trial error had not occurred, there is a real possibility that the jury would have returned a different verdict. [Citation omitted.]" *State v. Novotny,* 252 Kan. 753, 755, 851 P.2d 365 (1993).

*Analysis*

"Evidence of gang membership is admissible if relevant." *State v. Ross,* 280 Kan. 878, 885, 127 P.3d 249 (2006) (citing *State v. Jamison,* 269 Kan. 564, 568, 7 P.3d 1204 [2000]). Nevertheless, such evidence may also be prejudicial to the defendant in a case. 280 Kan. at 887. The defendant notes that this court approved of a limiting instruction relating to gang evidence in *Ross,* and argues that this court should require a similar instruction in all cases involving gang evidence. In *Ross,* the State introduced evidence that one of the defendant's key witnesses ("the only person at the shooting who testified that Ross was definitely not the shooter," 280 Kan. at 887) was in the same gang as the defendant. This court noted that "[a]lthough the evidence that Ross and Robinson [the defense witness] were gang members was also prejudicial to Ross, it was highly probative for evaluating the credibility of Robinson's testimony." 280 Kan. at 887. This court also found that the prejudicial effect of the gang evidence admitted in that case "was cured by the judge's instruction to the jury, which limited its consideration of the gang evidence." 280 Kan. at 888.

It is notable that the outcome in *Ross* did not turn on the jury instruction given. The *Ross* court did not hold that the instruction saved an otherwise reversible error, nor did *Ross* give any indication that absent the instruction, the court would have found error in the admission of the evidence. Rather, the court found that the trial court did not abuse its discretion in admitting the gang evidence in that case. 280 Kan. at 888. The instruction was one of many factors that the court considered in reaching this outcome. See 280 Kan. at 887-88. Thus, *Ross* does not stand for the proposition that a limiting instruction must be provided wherever evi-

dence of gang affiliation is admitted. In fact, as the following discussion demonstrates, this court has come to the opposite conclusion.

We have repeatedly held that gang-related evidence does not qualify as evidence of crimes or civil wrongs under K.S.A. 60-455. *State v. Goodson,* 281 Kan. 913, 925, 135 P.3d 1116 (2006); *State v. Lowe,* 276 Kan. 957, 963, 80 P.3d 1156 (2003); *Jamison,* 269 Kan. at 568; *State v. Sims,* 262 Kan. 165, 169-70, 936 P.2d 779 (1997); *State v. Cox,* 258 Kan. 557, 566, 908 P.2d 603 (1995); *State v. Bailey,* 251 Kan. 156, 166, 834 P.2d 342 (1992). But see *Goodson,* 281 Kan. at 925 (noting that when evidence is admitted relating to a gang's illegal activities, the evidence of the illegal acts may fall under K.S.A. 60-455); *People v. Jackson,* 357 Ill. App. 3d 313, 320-21, 828 N.E.2d 1222 (2005) (holding that a limiting instruction was required when the State sought to introduce evidence relating to the defendant's "gang involvement and collateral offenses," but that failure to provide the instruction was harmless in that case).

The defendant acknowledges the above authority but claims that gang evidence is similar to K.S.A. 60-455 evidence in that it is inherently prejudicial and may only be admitted for limited purposes. See *Goodson,* 281 Kan. at 922-25. Thus, he argues that this court should require trial courts to provide a limiting instruction, just as it does with K.S.A. 60-455 evidence. The defendant asks this court to establish a rule that "[w]here prejudicial information is admitted for a limited purpose, the district court should be required to give a limiting instruction to the jury."

This court explicitly rejected such an argument in *State v. Gholston,* 272 Kan. 601, 614-15, 35 P.3d 868 (2001), *cert. denied* 536 U.S. 963 (2002). There, Gholston was charged with premeditated, first-degree murder for firing a semi-automatic weapon into a parked car and killing a 2-year-old girl. At trial, the State sought to admit evidence that Gholston was a member of the Neighborhood Crips and that one of the people in the car with the girl during the shooting was a member of the Second Street rival gang. The trial court admitted the gang evidence over Gholston's objection.

On appeal, Gholston did not argue that the evidence should not have been admitted, but instead claimed that the trial court should

have supplied a limiting instruction to the jury regarding the role of the gang evidence. Gholston did not request such an instruction at trial. This court rejected Gholston's argument, explaining:

"Although defense counsel did not request a limiting instruction regarding admission of the gang affiliation evidence, Gholston now argues to this court that the trial court erred by admitting gang evidence without an appropriate limiting instruction. Gholston analogizes the gang evidence to prior bad acts evidence and asserts that the trial judge's failure to give a limiting instruction was clearly erroneous.

. . . .

"This court has consistently held that evidence of gang membership is not evidence of a crime or civil wrong under K.S.A. 60-455. Therefore, K.S.A. 60-455 does not apply and no limiting instruction is required. [Citations omitted.]

"Evidence of gang affiliation indicating a defendant is a member of a gang or is involved in gang-related activity is admissible to show a motive for an otherwise inexplicable act. Such evidence, however, is only admissible where there is sufficient proof that such membership or activity is related to the crime charged. [Citation omitted.]

"Evidence of gang membership pervaded this trial because gang membership was the motive for an otherwise inexplicable act of shooting and killing a child. In addition, after reviewing the record we find that there is no real possibility the jury would have rendered a different verdict if a limiting instruction had been given. The fact that the court did not provide such an instruction was not error." *Gholston*, 272 Kan. at 614-15.

The defendant argues that the *Gholston* analysis should be altered because of our recent decision in *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), wherein we discussed the proper interpretation and procedure regarding evidence of crimes and other civil wrongs under K.S.A. 60-455. The defendant reads *Gunby* to require "the district court, even in the absence of a request by the defense, to give a limiting instruction" for the K.S.A. 60-455 evidence. However, this statement does not reflect a proper understanding of this court's discussion in *Gunby*, nor does it take into account previous discussions by this court regarding the relationship between gang evidence and evidence of prior crimes or other wrongs.

In *Gunby*, we identified "at least three types of prejudice [that] can follow from the admission of other crimes or civil wrongs evidence":

" ' "First a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed." ' " 282 Kan. at 48-49 (quoting *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 [1973]).

It is well established in Kansas that "membership alone in [a] gang is not a crime or civil wrong." *Bailey*, 251 Kan. at 166. The legislature specifically limited the admissibility of evidence of crimes and civil wrongs in K.S.A. 60-455; no similar legislative statement exists with regard to evidence of gang affiliation. We acknowledge that gang evidence may be prejudicial to a defendant, just as any evidence offered against a defendant on trial for the crime charged is often prejudicial. See *Goodson*, 281 Kan. at 922-25. However, absent a request for a limiting instruction concerning gang evidence and absent any objection for the failure to give a limiting instruction on gang evidence, a trial court is not obligated to give such an instruction.

Even in *Gunby*, we reiterated that a trial court's failure to provide a limiting instruction in the case of evidence admitted under K.S.A. 60-455 will nevertheless be reviewed for clear error if a defendant fails to request such an instruction. The court explained:

"[A] trial judge should give such a K.S.A. 60-455 limiting instruction, but the failure to do so, though error, will no longer demand automatic reversal. Where the complaining party neither requested the instruction nor objected to its omission, the failure to give the instruction will be reversible only if clearly erroneous. [Citation omitted.]" 282 Kan. at 58-59.

Thus, contrary to the defendant's argument, even a court's failure to instruct on K.S.A. 60-455 evidence does not require automatic reversal; instead, it is reviewed under the same standard as other instructions that the parties have failed to request—clear error.

In this case, as in *Gholston*, evidence of gang membership "pervaded the trial" for two reasons: (1) to establish a motive for the otherwise inexplicable act of the defendant opening fire at a car containing men with whom he had grown up and (2) to explain

why Bell's story to the police and her testimony had changed so many times (in that she was under pressure from her gang not to implicate the defendant, her fellow gang member). Gang evidence was highly relevant and served to explain the events of the death of Johnson and injury of Anderson. See *Gholston*, 272 Kan. at 615 (gang evidence admissible to show a motive for committing an otherwise inexplicable act); *State v. Roberts*, 261 Kan. 320, 324-25, 931 P.2d 683 (1997) (gang evidence showing defendant and defense witness admissible to show witness bias and question credibility). Moreover, the State did not offer evidence of other crimes perpetrated by the Crips or the Bloods but only explained through the police officers' testimony that "[t]ensions were particularly high at that time" between the two gangs when the shooting occurred.

The evidence of the defendant's gang affiliation, as well as that of Bell and the victims, was admitted for purposes approved by this court. The State did not offer any evidence of previous crimes of civil wrongs committed by the gangs in question. The defendant did not request a limiting instruction regarding the gang evidence at trial, nor did he object to the instructions given. Under these circumstances, the trial court did not err in failing to provide such a limiting instruction *sua sponte*, and there was no real possibility that the jury would have returned a different verdict had such an instruction been provided.

III. *Did the trial court commit clear error by not instructing the jury that the shot that killed the victim must have come from outside the vehicle in which the victim was riding in order for criminal discharge of a firearm to act as an underlying felony for felony murder?*

The defendant argues that the trial court erred when it failed to clarify by instruction that the shot killing Johnson must have come from outside Anderson's vehicle. According to the defendant's argument, if the shot killing Johnson came from inside the vehicle, the defendant would be guilty of aggravated battery, which necessarily merges with felony murder under K.S.A. 2006 Supp. 21-3436(b). Moreover, if the shot came from inside Anderson's vehicle, there would be no basis for the criminal discharge of a firearm,

which provided the basis for the defendant's felony-murder conviction. The defendant acknowledges that the evidence established that five shots were fired, but notes that there were only three bullet holes in Anderson's windshield. According to the defendant, "[t]he key question for the jury was whether the shot that resulted in Mr. Johnson's death came from inside the car or outside the car. The jury, however, was never instructed on that question."

The defendant did not request such an instruction at trial; instead, he claims that the trial court's failure to provide clarification constituted clear error.

*Standard of Review*

"A trial court has discretion in giving instructions to the jury. On appeal, the instructions should be approved if, after being considered in their entirety, they properly and fairly state the law as applied to the facts. [Citation omitted.] A party may not assign as error the giving or failure to give an instruction unless the party objects to the instruction, stating the specific grounds for the objection. Absent such objection, an appellate court may reverse only if the instructions given are clearly erroneous. [Citation omitted.] An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility that the jury would have returned a different verdict. [Citation omitted.] When reviewing challenges to jury instructions, the instructions are to be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous. [Citation omitted.]" *State v. Johnson*, 255 Kan. 252, 256-57, 874 P.2d 623 (1994).

*Analysis*

The trial court instructed the jury that in order to establish the charge of criminal discharge of a firearm, the State was required to prove, among the other elements, that the defendant "maliciously and intentionally, without authorization, discharged a firearm at an occupied motor vehicle" and that this action resulted in bodily harm. The defendant now argues that the court should have included a clarification that "at an occupied motor vehicle" must be shown to mean "outside of an occupied motor vehicle" in order to distinguish that cause of action from a charge of aggravated battery. In other words, the defendant argues that the trial court

should have instructed that the State must prove the defendant discharged a firearm "at, *not in*" an occupied motor vehicle.

The defendant's claim is without merit in that the trial court *did* instruct the jury that the State must prove that he discharged the gun "*at* an occupied motor vehicle." (Emphasis added.) Webster's New Collegiate Dictionary 70 (1973) defines "at" as a preposition "used as a function word to indicate the goal of an indicated or implied action or motion <aim ~ the target>." Suffice it to say that the word "at" provides the clarity the defendant contends is missing.

K.S.A. 2006 Supp. 21-4219(b) defines "criminal discharge of a firearm at an . . . occupied vehicle" as the "malicious, intentional and unauthorized discharge of a firearm *at* a . . . motor vehicle . . . in which there is a human being." (Emphasis added.) The instructions given by the trial court in the instant case mirror this language. The defendant complains that additional instructions clarifying that his shots must have come from outside the vehicle should have been given. However, the plain language of the instructions given not only required the jury to find that the shots came from outside the vehicle, but the instructions given also correctly stated the law as applied to the facts. Moreover, we conclude that the jury could not reasonably have been misled by the instructions given. See *State v. Mays*, 277 Kan. 359, 379, 85 P.3d 1208 (2004). Thus, the defendant's claim of error fails.

IV. *Are the defendant's convictions for criminal discharge of a firearm and felony murder multiplicitous?*

The defendant claims that his convictions for criminal discharge of a firearm and felony murder are multiplicitous and violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. He argues that "[t]he criminal discharge of a firearm at an occupied vehicle causing great bodily harm *in this case* is not distinct from the homicide," and that "although there are multiple shots, there is only one shooting at close range at Mr. Johnson." However, the two convictions are not supported by one "single continuous act of violence"—the shooting.

*Standard of Review*

The issue of whether the defendant's convictions for criminal discharge of a firearm and felony murder are multiplicitous is a question of law over which this court exercises unlimited review. *State v. Schoonover,* 281 Kan. 453, 462, 133 P.3d 48 (2006).

" 'Multiplicity is the charging of a single offense in several counts of a complaint or information. The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense. [Citation omitted.] Such multiple punishments are prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. [Citations omitted.]' " *State v. Schuette,* 273 Kan. 593, 600, 44 P.3d 459 (2002) (quoting *State v. Garcia,* 272 Kan. 140, 143-44, 32 P.3d 188 [2001]).

*Analysis*

Conway did not raise his multiplicity argument before the district court. Generally, issues not raised before the trial court cannot be raised on appeal. *State v. Rojas,* 280 Kan. 931, 932, 127 P.3d 247 (2006). However, this court may choose to review an issue not raised below when consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights. *State v. Schroeder,* 279 Kan. 104, 116, 105 P.3d 1237 (2005). This court has explained that the "fundamental right of a defendant to a fair trial under the 5th and 14th Amendments to the Constitution of the United States would be violated by a multiplicitous conviction." *State v. Dubish,* 234 Kan. 708, 718, 675 P.2d 877 (1984). We therefore choose to review the defendant's claim of multiplicity.

The defendant's "single continuous act of violence" argument relies heavily on this court's decision in *State v. Smallwood,* 264 Kan. 69, 94, 955 P.2d 1209 (1998), where the court held that a conviction for felony murder based on child abuse and a separate conviction for child abuse were multiplicitous. He argues that just as in *Smallwood* where a single act of child abuse causing the death of that child would not support two charges, the one act of shooting into a vehicle causing the death of Johnson may not support the two charges in this case.

Since *Smallwood,* this court has considered in depth the issue of multiplicity, focusing (as this court has in the past) not on the

activity of the defendant but rather on the elements of the offenses charged and the expressed legislative intent concerning offenses charged. See *Schoonover*, 281 Kan. 453, Syl. ¶¶ 6, 7, 8; *State v. Walker*, 283 Kan. 587, Syl. ¶¶ 20, 21, 153 P.3d 1257 (2007). *Schoonover* criticized the *Smallwood* decision as "not follow[ing]" the analysis of felony murder in light of the strict elements test and legislative intent and proceeding without any attempt at reconciliation of the case law. *Schoonover*, 281 Kan. at 492.

*Schoonover* and *Walker* have explicitly rejected the defendant's "single act of violence" argument and confirmed this court's "prior approach to the issue of multiplicity when a defendant has been convicted of both felony murder and the underlying felony. Specifically, *Schoonover* recognized that a legislature could authorize cumulative punishments under felony murder and underlying felony statutes. [Citations omitted.]" See *State v. Nguyen*, 281 Kan. 702, 729, 133 P.3d 1259 (2006). To determine whether two convictions are multiplicitous and thus violate double jeopardy, *Schoonover* noted that

"the overarching inquiry is whether the convictions are for the same offense. There are two components to this inquiry, both of which must be met for there to be a double jeopardy violation: (1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one?" 281 Kan. at 496.

In this case, the convictions of criminal discharge of a firearm and felony murder arise from the same conduct, but there are two separate offenses. K.S.A. 21-3401(b) defines first-degree felony murder as "the killing of a human being committed . . . in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436 and amendments thereto." K.S.A. 2006 Supp. 21-3436(a)(15) states that "any felony offense as provided in K.S.A. 21-4219, and amendments thereto":

"shall be deemed an inherently dangerous felony whether or not such felony is so distinct from the homicide alleged to be a violation of subsection (b) of K.S.A. 21-3401, and amendments thereto, as not to be an ingredient of the homicide alleged to be a violation of subsection (b) of K.S.A. 21-3401, and amendments thereto." K.S.A. 2006 Supp. 21-3436(a).

K.S.A. 2006 Supp. 21-4219(b) defines "criminal discharge of a firearm at an . . . occupied vehicle" as the "malicious, intentional and unauthorized discharge of a firearm at a . . . motor vehicle . . . in which there is a human being." The statute further explains that "[c]riminal discharge of a firearm at an occupied building or occupied vehicle which results in bodily harm to a person during the commission thereof is a severity level 5, person felony," and "[c]riminal discharge of a firearm at an occupied building or occupied vehicle which results in great bodily harm to a person during the commission thereof is a severity level 3, person felony." K.S.A. 2006 Supp. 21-4219(b).

In defining two separate offenses and providing punishment for each offense, the legislature has expressed its intent that a defendant may be punished separately for each offense committed. Just as the Double Jeopardy Clause of the United States Constitution focuses upon the offense and not the activity of the person charged, our legislature also has focused upon the definition and elements of each crime and not the activity of the defendant to determine whether separate punishment may be imposed.

Our recent decision in *Walker* demonstrates that the defendant's argument in this case is without merit. Walker had opened fire at a home, killing a 16-month-old girl. He was convicted of both felony murder and criminal discharge of a firearm and, similar to the argument the defendant advances in this case, Walker argued on appeal that his convictions of both crimes violated double jeopardy because both involved the "single act of violence" of the defendant shooting at the house. Rejecting his argument, we concluded that although the convictions arose from the same conduct, the offenses did not meet the second component of the *Schoonover* inquiry because, whether judged under the same-elements test or by statutory interpretation, the convictions were not multiplicitous. 283 Kan. at 610-13.

We explained:

"In this case, a same-elements test reveals that each offense required proof of an element not necessary to prove the other offense. The firearm offense requires proof that the defendant discharged a firearm at an occupied dwelling, while felony murder requires proof that a person was killed during the commission of

an inherently dangerous felony. Compare K.S.A. 21-3401(b) with K.S.A. 2006 Supp. 21-4219(b)." 283 Kan. at 611.

We further explained that separate punishments were legislatively intended for each offense, even though each offense was the result of a single act:

"[T]hrough K.S.A. 2006 Supp. 21-3436(a), the Kansas Legislature expressed an intent that felony murder and any inherently dangerous felony listed in K.S.A. 2006 Supp. 21-3436(a) are separate offenses for which cumulative punishments may be imposed.

"K.S.A. 2006 Supp. 21-3436(a)(15) provides that any felony offense provided for in K.S.A. 21-4219 and amendments thereto 'shall be deemed an inherently dangerous felony whether or not such felony is so distinct from the homicide alleged to be a violation of' the felony-murder statute. K.S.A. 2006 Supp. 21-4219(b) makes discharge of a weapon at an occupied building a severity level 7 felony." 283 Kan. at 612.

We therefore concluded that

"whether we construe K.S.A. 2006 Supp. 21-3436(a) or apply the same-elements test as a rule of construction, the Kansas Legislature's intent is clear: felony murder and felony discharge of a weapon are intended to be separate offenses for which there can be cumulative punishments. Double jeopardy does not attach to convictions under the felony-murder statute, K.S.A. 21-3401(b), and felony discharge of a firearm at an occupied dwelling, K.S.A. 2006 Supp. 21-4219(b), even if the charges arise from the same conduct. Walker's sentences for those convictions are not multiplicitous and do not violate his right against double jeopardy." 283 Kan. at 612-13.

Just as in *Walker*, the defendant's claim of multiplicity fails. His convictions of felony murder and criminal discharge of a firearm are separate offenses for which cumulative punishments may be imposed.

V. *Did the alleged errors cumulatively deny the defendant a fair trial?*

The defendant argues that even if the issues raised in his brief do not individually rise to the level of reversible error, the cumulation of those errors denied him the right to a fair trial.

"Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if

the evidence is overwhelming against the defendant. [Citation omitted.]" *State v. Ackward*, 281 Kan. 2, 29, 128 P.3d 382 (2006).

As the discussion of the four previous issues demonstrates, the defendant has failed to establish that any error or prejudice occurred at the trial level. Under such circumstances, the defendant's right to a fair trial has not been impaired. See *State v. Humphery*, 267 Kan. 45, 64, 978 P.2d 264 (1999).

Affirmed.