(223 P.3d 827)
No. 100,075

STATE OF KANSAS, *Appellee*, v. BARRY P. FILLMAN, *Appellant*.

Opinion filed January 29, 2010.

*Carl Folsom, III*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before CAPLINGER, P.J., BUSER and STANDRIDGE, JJ.

STANDRIDGE, J.: Barry P. Fillman was convicted of two counts of aggravated assault and one count of aggravated battery. This is his direct appeal.

## FACTS

On January 3, 2007, pursuant to an amended complaint, Fillman was charged, *inter alia*, with committing two counts of aggravated assault and one count of aggravated battery. These charges were based on an incident taking place at Tammy Gannon's apartment on September 28, 2006, where Fillman fired a .22 caliber rifle at Gannon three times, hitting her once and intentionally missing her twice. On October 2, 2006, police arrested Fillman. During the arrest, police discovered that Fillman possessed two flasks containing explosive powder and protruding fuses, a tin can that was shaped like a hockey puck and wrapped in blue tape with a protruding fuse, a bag of .22 caliber ammunition, and a .22 caliber rifle. See *United States v. Fillman*, 2009 WL 1164731 (10th Cir. 2009) (unpublished opinion).

Prior to his jury trial on the aggravated assault and aggravated battery charges, Fillman was charged and convicted in the United States District Court for the District of Kansas of two counts of possessing an unregistered destructive device and three counts of being a felon in possession of a firearm and ammunition (found on

him and used at Gannon's apartment). Each of the five counts for which he was convicted carried a maximum statutory sentence of 10 years' imprisonment. See 18 U.S.C. § 924(a)(2) (2006); 26 U.S.C. § 5871 (2006).

Fillman's presentence investigation report reflected that his total offense level under the federal sentencing guidelines was 38 and that his criminal history category was III, making the advisory federal sentencing guideline range 292 to 365 months' imprisonment. In calculating the offense level, the pretrial services officer assigned to Fillman's case took into account that Fillman unlawfully possessed the firearm in conjunction with an aggravated assault and aggravated battery upon Gannon. Pursuant to the United States Sentencing Commission Guidelines Manual (USSG) § 2K2.1(b)(6) (2003), these attenuating circumstances added four levels to the total offense level. See 18 U.S.C. § 3553 (2006). On July 23, 2007, Fillman was sentenced to a controlling term of 292 months' imprisonment. His convictions and sentence were later affirmed on appeal. See *Fillman*, 2009 WL 1164731.

After he received his federal sentence, Fillman filed a motion in district court to dismiss the state charges of aggravated assault and aggravated battery pending against him. In support of this motion, Fillman maintained he already had been prosecuted for these particular crimes when the federal court relied on them to enhance his total offense level at sentencing. Based on these facts, Fillman argued that K.S.A. 21-3108(3)(a) prohibited the State from prosecuting him. The district court denied Fillman's motion, holding that because the elements of the federal crimes and state crimes were different, K.S.A. 21-3108(3)(a) did not bar the State from pursuing its case against Fillman.

A jury ultimately convicted Fillman of two counts of aggravated assault, K.S.A. 21-3410(a), and one count of aggravated battery, K.S.A. 21-3414(a)(2)(B). Fillman filed a motion for a new trial, within which he again raised his argument that K.S.A. 21-3108(3)(a) prohibited the State from prosecuting him. The district court denied the motion and sentenced Fillman to a controlling 29-month prison sentence. The district court ordered Fillman's state sentence to run concurrent with his federal sentence.

## ANALYSIS

Fillman raises three points of error on appeal: (1) The district court erred in failing to dismiss the aggravated assault and aggravated battery charges against him based on the previous prosecution in federal court; (2) the two convictions of aggravated assault upon Gannon were multiplicitous; and (3) the district court erred in sentencing him to a higher sentence based on a criminal history that was not proved to the jury beyond a reasonable doubt. We address each of these points in turn.

### I. *Previous Prosecution*

Relying on K.S.A. 21-3108(3)(a), Fillman argues the district court erred when it did not dismiss the aggravated assault and aggravated battery charges against him based on the previous prosecution in federal court. Whether the district court erred in applying K.S.A. 21-3108(3)(a) to the facts of this case raises a question of law subject to unlimited review. See *State v. Schroeder*, 279 Kan. 104, 108, 105 P.3d 1237 (2005).

As a preliminary matter, we note that Fillman relies exclusively on K.S.A. 21-3108(3)(a) and *not* on the federal or state constitutional guarantees against double jeopardy to support his argument on this particular issue. To that end, we find it helpful to distinguish between the two concepts before addressing Fillman's argument.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. See, *e.g.*, *State v. Schoonover*, 281 Kan. 453, 463, 133 P.3d 48 (2006) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 [1969], *overruled on other grounds Alabama v. Smith*, 490 U.S. 794, 104 L. Ed. 2d 865, 109 S. Ct. 2201 [1989]). The Kansas Supreme Court has recognized that the language of the Fifth Amendment to the United States Constitution guarantees no greater double jeopardy protection to an accused than does § 10 of the Kansas Constitution Bill of Rights; in other words, the provisions are coextensive. See *Schoonover*, 281 Kan. at 474; *State v. Thompkins*, 271 Kan. 324,

336, 21 P.3d 997 (2001); *State v. Williams*, 268 Kan. 1, 6, 988 P.2d 722 (1999).

Notably, the United States Supreme Court has determined that the Fifth Amendment prohibition against double jeopardy does not apply to prosecutions for the same crime by separate sovereignties. See *Heath v. Alabama*, 474 U.S. 82, 87-89, 88 L. Ed. 2d 387, 106 S. Ct. 433 (1985). With that said, the Kansas Legislature enacted a statute specifically prohibiting federal and state prosecutions for the same crime under certain circumstances. See K.S.A. 21-3108(3). That statute states, in pertinent part:

> "A prosecution is barred if the defendant was formerly prosecuted in a district court of the United States or in a court of general jurisdiction of a sister state or in the municipal court of any city of this state for a crime which is within the concurrent jurisdiction of this state, if such former prosecution:
> "(a) Resulted in either a conviction or an acquittal, and the subsequent prosecution is for the same conduct, *unless each prosecution requires proof of a fact not required in the other prosecution*, or the offense was not consummated when the former trial began." (Emphasis added.) K.S.A. 21-3108(3)(a).

To determine whether K.S.A. 21-3108(3)(a) prevents the State from pursuing charges against a defendant who previously has been prosecuted by the federal government, our Supreme Court has stated that where one statute describing an offense requires factual elements that another statute does not, "then the offenses are not the same, and a conviction or acquittal under one does not bar prosecution under the other on the ground of double jeopardy." *State v. Worth*, 217 Kan. 393, 398, 537 P.2d 191 (1975).

In *Worth*, the defendant previously was convicted in federal court of unlawful possession of a firearm, unlawful transfer of a firearm, unlawfully making a false statement in the purchase of explosives, and unlawfully receiving an explosive that had been transported in interstate commerce. The defendant subsequently was charged and convicted in state court for the sale of cocaine arising from the same underlying incident. The defendant argued on appeal that K.S.A. 21-3108(3)(a) prevented the State from pursuing its case against him because of his previous convictions in federal court. Our Supreme Court rejected the defendant's argument, noting that the federal charges required factual elements not

required in the state charges and vice versa. The court held that K.S.A. 21-3108(3)(a) did not prevent the State from prosecuting the defendant for selling cocaine. 217 Kan. at 397-98.

The State contends *Worth* is precisely on point with the facts presented in this case. Specifically, the State points out that Fillman was convicted in federal court of two counts of possessing an unregistered destructive device and three counts of being a felon in possession of a firearm and ammunition. The State further points out that Fillman was charged in state court with aggravated assault, which is defined as using a deadly weapon to intentionally place another person in reasonable apprehension of immediate bodily harm, and aggravated battery, which is defined as intentionally causing great bodily harm to another person or disfigurement of another person. The State concludes that, just like the facts in *Worth*, the federal prosecution of Fillman required factual elements to be proved that were not required in his state prosecution, and his state prosecution required factual elements to be proved that were not required in his federal prosecution.

Fillman acknowledges both the analysis and holding in *Worth*. Nevertheless, Fillman maintains that when his aggravated assault and aggravated battery charges were used by the federal court to enhance the base offense level for purposes of sentencing, those crimes became facts constituting the elements of his firearm convictions in the federal prosecution. We disagree.

The United States Supreme Court has held that the facts constituting the elements of a crime are those that increase the maximum punishment to which the defendant is exposed under governing law. See *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The Court's holding was based on simple deductive reasoning. A crime is defined as conduct that is punishable by the State. Conduct is punishable by the State when it exposes the individual to new or additional penalties. Therefore, any conduct that increases the maximum punishment to which he or she is otherwise exposed must be deemed a crime. The predicate facts of such conduct constitute the " 'elements' " of the "crime." *Apprendi*, 530 U.S. at 483 n.10 (citing *Jones v. United States*, 526

U.S. 227, 244-48, 143 L. Ed. 2d 311, 119 S. Ct. 1215 [1999]); see also *Apprendi*, 530 U.S. at 500-01 (Thomas, J., concurring).

Based on these principles, the relevant inquiry (to determine if facts supporting enhancement of a base level offense constitute elements of a crime) is whether those facts expose the defendant to a greater punishment than the maximum punishment authorized by the jury's guilty verdict. Where the facts relevant to the enhancement do not have the effect of increasing the maximum punishment to which the defendant is exposed, the facts do not constitute elements of a crime under the *Apprendi* rationale.

In order to determine the maximum punishment to which Fillman was exposed as a result of his federal convictions, we turn to the case of *United States v. Booker*, 543 U.S. 220, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005). In *Booker*, the United States Supreme Court held that the maximum punishments set forth in the federal sentencing guidelines were no longer mandatory, but only advisory; thus, courts would now be required to look to the United States Code to determine the maximum punishment for a particular crime. See 543 U.S. at 246-68. Applying the holding in *Booker* here, then, aggravated assault and aggravated battery did not become necessary elements of the federal convictions against Fillman unless the maximum punishment to which Fillman was exposed as a result of his federal convictions exceeded the maximum statutory sentence set forth in the United States Code.

At this point, we find a brief review of both the facts and the holding in *Booker* instructive. Booker was arrested after police officers found 92.5 grams of crack cocaine in his duffle bag. He later gave a written statement to the police in which he admitted to selling an additional 566 grams of crack cocaine. A jury ultimately found Booker guilty of possessing with an intent to distribute at least 50 grams of crack cocaine. 21 U.S.C. § 841(b)(1)(A)(iii) provided for a statutory minimum sentence of 10 years in prison with a maximum sentence of life.

Notwithstanding the sentencing range set forth in the statute, federal judges at that time were required to impose punishment within the range of sentences set forth in the federal sentencing guidelines. In calculating the applicable range of sentences, the

guidelines take into account both the seriousness of the offense and the offender's criminal history. Each type of crime is assigned a base offense level, which is the starting point for determining the seriousness of a particular offense. In addition to base offense levels, each offense type typically carries with it a number of specific offense characteristics. These characteristics vary from offense to offense and work to increase or decrease the base offense level and, ultimately, the sentence an offender receives.

At Booker's sentencing, the judge found by a preponderance of the evidence that (1) Booker distributed 566 grams over and above the 92.5 grams that the jury had to have found in order to return a guilty verdict and (2) Booker had obstructed justice. Under the mandatory federal sentencing guidelines, this factual finding by the judge increased Booker's base offense level from 32 to 36, which increased his sentence from a maximum of 262 months (21 years, 10 months) to a range of 30 years to life.

Booker appealed, arguing the federal sentencing guidelines violated his right to a jury trial. More specifically, Booker alleged that the guidelines required an increase in his base offense level and thus an enhancement in the sentencing range, based on facts determined by a sentencing judge rather than a jury. In a comprehensive two-part opinion, the United States Supreme Court agreed with Booker. In the first part of the opinion, the Court held that it was unconstitutional to use any fact to enhance a base offense level, and thus the sentencing range, under the federal sentencing guidelines unless that fact was proven to a jury beyond a reasonable doubt. In the second part of the opinion, the Court provided a remedy for these unconstitutional enhancements by deeming the federal sentencing guidelines to be advisory in nature, as opposed to mandatory. See 543 U.S. at 245-68.

The fact that the federal sentencing guidelines are now only advisory means that the maximum punishment to which a defendant is exposed under governing law is no longer the high number in the base sentencing range under the guidelines. Instead, the maximum punishment to which a defendant is exposed is now the maximum sentence prescribed in the applicable section of the United States Code.

In Fillman's case, the federal court's consideration of aggravated assault and aggravated battery resulted in an increased sentence of 292 months' imprisonment under the advisory federal sentencing guidelines. Notably, however, the 292 months imposed *did not* exceed the maximum statutory sentence of 50-years' imprisonment prescribed by the applicable section of the United States Code. See 18 U.S.C. § 924(a)(2); 26 U.S.C. § 5871 (establishing that each of the five counts for which Fillman was convicted carried maximum statutory sentence of 10 years' imprisonment, making maximum sentence 50 years).

Because the 292-month federal sentence did not exceed the maximum statutory sentence of 50 years' imprisonment, aggravated assault and aggravated battery did not become necessary elements of the federal convictions. See *Apprendi*, 530 U.S. at 490 (facts constituting elements of crime are those that increase maximum punishment to which defendant is exposed under governing law). Because aggravated assault and aggravated battery did not become necessary elements of the federal convictions, the federal prosecution required factual elements not required in the state prosecution and vice versa. As such, K.S.A. 21-3108(3)(a) does not bar a subsequent prosecution against Fillman for aggravated assault and aggravated battery in state court. See K.S.A. 21-3108(3)(a) (prosecution barred if defendant formerly prosecuted in federal court, federal prosecution resulted in conviction, and state prosecution is for same conduct, "unless each prosecution requires proof of a fact not required in the other prosecution").

## II. *Multiplicity*

Fillman argues that his two convictions for aggravated assault upon Gannon were multiplicitous. Fillman acknowledges he did not raise the multiplicity issue at trial. Nonetheless, he properly notes that our appellate courts consider multiplicity issues raised for the first time on appeal to serve the ends of justice or to prevent a denial of a fundamental right. See, *e.g.*, *State v. Simmons*, 282 Kan. 728, 743, 148 P.3d 525 (2006). Whether convictions are multiplicitous is a question of law subject to unlimited review. *Schoonover*, 281 Kan. at 462.

Multiplicity is the charging of a single offense in several counts of a complaint or information. Multiplicitous charges create a potential for multiple punishments for one single offense. Such multiple punishments are prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. *State v. Conway*, 284 Kan. 37, 54, 159 P.3d 917 (2007).

In *Schoonover*, our Supreme Court established an analytical framework for determining multiplicity issues. The court stated:

"In analyzing a double jeopardy issue, the overarching inquiry is whether the convictions are for the same offense. There are two components to this inquiry, both of which must be met for there to be a double jeopardy violation: (1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one? *Under the first component, if the conduct is discrete, i.e., committed separately and severally, the convictions do not arise from the same offense and there is no double jeopardy violation.* If the charges arise from the same act or transaction, the conduct is unitary and the second component must be analyzed to see if the convictions arise from the same offense. Under the second component, it must be determined whether the convictions arise from a single statute or from multiple statutes. If the double jeopardy issue arises from convictions for multiple violations of a single statute, the unit of prosecution test is applied. If the double jeopardy issue arises from multiple convictions of different statutes, in other words it is a multiple description issue, the same-elements test is applied." (Emphasis added.) 281 Kan. 453, Syl. ¶ 15.

With regard to the first issue, the parties dispute whether the course of conduct supporting Fillman's two convictions for aggravated assault were part of the same act or were separate actions.

*Schoonover* identified four factors to be considered in resolving this dispute:

"(1) [W]hether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 281 Kan. at 497.

In order to properly consider these factors, we find it necessary to review the evidence presented at trial to support the two counts of aggravated assault. Highly summarized, the evidence presented at trial establishes that Fillman brought a pistol inside Gannon's apartment and placed it underneath her couch in her living room.

Fillman then went to sleep in Gannon's bedroom. Gannon found Fillman's pistol under her couch and hid the pistol in her purse. She then woke up Fillman and told him that he needed to leave. While he was gathering up his things, Fillman looked underneath the couch and discovered that his gun was no longer there. Fillman asked Gannon where the gun was, and Gannon acted like she did not know what he was talking about. Fillman eventually walked out to his vehicle where he got a .22 rifle, walked back into the apartment, and then resumed asking Gannon what happened to his pistol. According to Fillman, while questioning Gannon, he fired a shot at a wall inside the apartment to "get her attention" because he thought Gannon was reaching inside the purse to grab the pistol. Then, 10 minutes later, he fired another shot at the wall when he thought Gannon was reaching for the pistol a second time. Gannon's son, who was inside the apartment at the time of the incident, also stated that the shots were separated by about 10 minutes.

Applying the *Schoonover* factors to these facts, we find two separate acts occurred inside Gannon's apartment. As to the first factor, the two shots fired into the wall were 10 minutes apart. Given there was no other conduct supporting a charge of assault between the first and second shot, we do not believe the evidence clearly establishes one way or the other whether the conduct occurred at or near the same time. As to the second factor, however, the facts establish that the two shots fired into the wall occurred at the same location.

As to the third and fourth factors, we find that there was an intervening event between the first and second shot and that there was a fresh impulse which motivated the second shot into the wall. More specifically, the evidence demonstrates that Fillman fired the first shot into the wall when he believed Gannon was reaching for the pistol. A 10-minute period of time passed and then, according to Fillman, Gannon allegedly reached for the pistol a second time. These facts support a finding that there was a fresh impulse motivating Fillman for each of the two times he shot into the wall— Fillman's belief that Gannon was reaching for a pistol on two separate occasions 10 minutes apart.

In balancing the four *Schoonover* factors, we conclude Fillman's two convictions of aggravated assault did not arise from the same conduct; thus, his convictions were not multiplicitous. See also *State v. Hawkins*, 40 Kan. App. 2d 10, 17-18, 188 P.3d 965 (2008), *rev. denied* 287 Kan. 767 (2009) (defendant's convictions of aggravated assault and aggravated assault of law enforcement officer were not multiplicitous despite fact that both crimes involved same victim; defendant shot at victim prior to victim identifying himself as police officer; defendant later acted like he was going to shoot at victim while victim gave chase and identified himself as police officer).

## III. *Criminal History*

Finally, Fillman contends the district court erred in sentencing him to a higher sentence based on a criminal history that was not proved to a jury beyond a reasonable doubt. Fillman concedes that our Supreme Court has rejected this argument in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). This court is duty bound to follow Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Because our Supreme Court has consistently followed its position in *Ivory*, this court is unable to grant Fillman relief on this issue. See *State v. Brinklow*, 288 Kan. 39, Syl. ¶ 10, 200 P.3d 1225 (2009).

Affirmed.

\* \* \*

CAPLINGER, J., concurring: I concur with the majority's decision affirming Fillman's convictions. However, I disagree with the majority's rationale in rejecting Fillman's double jeopardy challenge and, specifically, with the majority's failure to explain its extension of the protection provided by K.S.A. 21-3108(3)(a) to the sentencing phase of a former "prosecution."

As the majority notes, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against multiple punishments for the same offense as well as second prosecutions for the same offense after conviction or acquittal. Slip op.

at 5. Further, § 10 of the Kansas Constitution Bill of Rights guarantees the same protection. If Fillman were relying upon either our federal or state Constitution to support his double jeopardy claim, the majority's extended discussion of the sentencing phase of Fillman's federal prosecution might be appropriate.

However, as the majority recognizes, because the Fifth Amendment prohibition against double jeopardy does not apply to prosecutions for the same crime by separate sovereignties, Fillman must rely upon K.S.A. 21-3108(3)(a) as the basis for his double jeopardy claim. The majority then proceeds to extensively discuss the federal sentencing process and whether the facts supporting Fillman's base level offense enhancement constituted elements of a crime in his federal prosecution. It is at this point that I believe the majority's analysis overlooks an issue regarding the scope of our statute which is dispositive of Fillman's double jeopardy claim.

K.S.A. 21-3108(3)(a) provides in relevant part:

"A *prosecution* is barred if the defendant was formerly prosecuted in a district court of the United States . . . for a crime which is within the concurrent jurisdiction of this state, if such former *prosecution*:

"(a) Resulted in either a conviction or an acquittal, and the subsequent *prosecution* is for the same conduct, unless each *prosecution* requires proof of a fact not required in the other prosecution." (Emphasis added.)

The majority simply assumes that the term "prosecution" refers to the sentencing phase of a federal prosecution. Again, if we were applying the Double Jeopardy Clause of the federal Constitution or its Kansas counterpart, that assumption might be accurate. However, we are concerned here only with K.S.A. 21-3108(3)(a) and the term "prosecution," as used in that statute. K.S.A. 2008 Supp. 21-3110(18) defines "prosecution" as "all legal proceedings by which a person's liability for a crime is determined." Once an individual has been convicted of a crime, the *liability* for that crime has been determined, although the punishment has not.

That K.S.A. 21-3108(3)(a) does not bar prosecution when the conduct at issue was used only in the sentencing phase of a former prosecution seems evident from the language of the statute. It does not bar prosecution if "each prosecution requires *proof* of a fact not required in the other prosecution." This provision clearly does

not apply when the conduct at issue was not required to be proven in federal court, as was the case here.

And in that regard, I would find it unnecessary to engage in the majority's lengthy analysis as to whether the facts constituting the elements of the crime increased the maximum federal punishment to which Fillman was exposed. As the majority points out, the United States Supreme Court has held that the "facts" constituting a crime are those that increase the maximum punishment to which the defendant is exposed under governing law. *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). However, the majority does not fully state the holding of *Apprendi*, *i.e.*, that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum *must be submitted to a jury, and proved beyond a reasonable doubt.* 530 U.S. at 490.

Clearly, if the facts related to Fillman's conduct had increased his penalty in the federal case beyond the statutory maximum, those facts would have been submitted to a jury and proven beyond a reasonable doubt. And had that been the case, only then would we consider the application of K.S.A. 21-3108(3)(a) and determine whether each prosecution required *proof* of a fact not required in the other prosecution.

Thus, I would simply find that the federal court's use of Fillman's underlying conduct to enhance his sentence in federal court was not a "prosecution" as contemplated by K.S.A. 21-3108(3)(a).